820 F.2d 799
 125 L.R.R.M. (BNA) 2761, 106 Lab.Cas. P 12,396
 John J. BAGSBY, Plaintiff-Appellant, Cross-Appellee,
v.
LEWIS BROTHERS, INC., OF TENNESSEE, Local No. 199 of the
Bakery, Confectionary and Tobacco Workers'
International Union of America,
Defendants-Appellees, Cross-Appellants.
 Nos. 86-5363, 86-5364 and 86-5365.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 30, 1987.
Decided June 10, 1987.
 
 Bill Hodde, Madison, Tenn., Thomas F. Bloom (argued), Nashville, Tenn., for plaintiff-appellant, cross-appellee.
 Thomas O. Magan (argued), Robert H. Brown, Kahn, Dees, Donovan and Kahn, Evansville, Ind., James G. Stranch, III (argued), Nashville, Tenn., R. Jan Jennings, Jane Stranch, for defendants-appellees, cross-appellants.
 Before RYAN and BOGGS, Circuit Judges, and BROWN, Senior Circuit Judge.
 BAILEY BROWN, Senior Circuit Judge.
 
 
 1
 In this hybrid breach of contract/unfair representation action under Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, defendants-appellees-cross-appellants Lewis Brothers Bakeries, Inc. (the Company) and Local No. 199 of the Bakery, Confectionary & Tobacco Workers' International Union of America (the Union) appeal the judgment of the district court holding that the Company breached the collective bargaining agreement and that the Union breached its duty of fair representation. Plaintiff-Appellant John J. Bagsby (Bagsby) appeals the judgment of the district court denying him the remedies of reinstatement, lost benefits, back pay and attorney's fees. We hold that the Company did not breach the collective bargaining agreement. Therefore, the judgment of the district court is vacated and the case is remanded for dismissal.
 
 
 2
 The factual background of this case is essentially undisputed. The Company (d/b/a Country Hearth Bread) employed Bagsby as a route salesman. Bagsby's primary responsibility was to deliver the Company's bread to retailers. Bagsby was a member of the Union, which was the exclusive bargaining representative under the collective bargaining agreement (the Agreement) between the Union and the Company.
 
 
 3
 On June 25, 1982, the Company's Nashville manager, Gene Dillard, received a complaint from a retailer concerning errors made by Bagsby in his charges for bread. Dillard immediately suspended Bagsby without pay.
 
 
 4
 Upon learning of his suspension, Bagsby contacted his shop steward, Joe Holt, and the Union's business agent, Lawrence Simmons. Holt offered little assistance, but Simmons advised Bagsby to report to work the next day[1] and agreed to arrange a grievance meeting involving Bagsby, the Union and the Company.
 
 
 5
 The grievance meeting, attended by Bagsby, Holt, Simmons, Dillard and Bob Brannon (a sales manager for the Company), took place on July 1, 1982. Just prior to the meeting, Bagsby met with Simmons and informed him that he would refuse to discuss the situation with anyone until the Company complied with its alleged contractual obligation to provide written notice of the reason for his discharge. During the grievance meeting, Dillard explained to Bagsby that the June 25 customer complaint had essentially been dropped, but that the investigation triggered by the complaint had revealed Bagsby's practice of making unauthorized sales and of selling products above the authorized price and pocketing the difference. Dillard requested that Bagsby comment on those allegations, and Simmons advised him to do so, but Bagsby refused to say anything until the Company committed the allegations to writing as allegedly required by the Agreement. This refusal to speak before receiving a written notice apparently stemmed from advice given to Bagsby by legal counsel. The Union did not demand, or even ask for, a written notice.[2] At the meeting's conclusion, Dillard stated that Bagsby was being fired for dishonesty and for selling unauthorized products.
 
 
 6
 On July 6, 1982, Bagsby received from the Company a Tennessee Department of Employment Security form indicating that he had been fired on June 26, 1982 for dishonesty. Bagsby had no further contact with either the Company or the Union until he filed this suit against them on December 12, 1982.
 
 
 7
 The district court held that the Company breached Article 8 of the Agreement by failing to provide Bagsby a written notice of the reasons for his discharge, and the Union breached its duty of fair representation by failing to demand or even request such a notice. Article 8 of the Agreement provides:
 
 
 8
 DISCHARGES: A discharge or suspension may not be executed unless there is a just or proven cause. Such complaints must be put in writing by the Employer with copies to the salesman in question and the Union. The salesman has ten days from the date of the written notice in which to reply. Discharges will be [sic] automatically be in effect if the following items of complaint can be proven.1. Drinking of alcoholic beverages while on duty.
 
 
 9
 2. Dishonesty.
 
 
 10
 3. Unauthorized passengers being transported in company vehicles.
 
 
 11
 4. Usage of any type of narcotics; unless prescribed by the physician for medical usage. Such usage must be in writing by the physician in charge.
 
 
 12
 5. No selling of any unauthorized products.
 
 
 13
 Warning notices will not be in effect after six months from the date of the notice and the salesman in question has ten days in which to reply.
 
 
 14
 (Emphasis added.) In holding that Article 8 requires written notice even where, as here, the discharge is "automatic" because based on dishonesty and sale of unauthorized products, the court reasoned:
 
 
 15
 [T]he Article does not expressly state whether the written notice provision applies even under the circumstances of an automatic discharge.... [T]he contract ... detailed specific methods for discharging an employee. In light of the specificity of other contract provisions, the absence of any discussion in the negotiations that an exception to the written notice requirement was being made for automatic discharges indicates that such an exception was not intended by the parties.
 
 
 16
 Bagsby v. Lewis Brothers Bakeries, Inc., No. 3-82-0053, slip op. at 6-7 (M.D. Tenn. Jan. 31, 1986). In holding that the Union's duty of fair representation required at least a request for a written notice, the court stated:
 
 
 17
 Under the terms of the contract, plaintiff was entitled to a written description of the company's accusations. Defendant union's business manager stated that he never asked the company to put these charges into writing because he felt that the defendant company had given just cause for plaintiff's dismissal. Regardless of the business manager's feeling that the charges were substantiated, the defendant union had an obligation to obtain a written complaint for its member.
 
 
 18
 Id. at 8 (citation omitted).
 
 
 19
 The district court, however, denied Bagsby's request for reinstatement, lost wages and back pay. The court instead ordered only "that defendant company commit to writing the charges against the plaintiff and afford him an opportunity to reply at a meeting of all concerned parties. If either party wishes to contest the outcome, then that party shall resort to the grievance procedure as specified in the contract." Id. at 8-9. The district court also denied Bagsby's request for an attorney's fee award because, in the district court's view, Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), precludes such an award in the absence of express statutory authorization.[3]
 
 
 20
 In this hybrid suit under Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, to recover against either the Company or the Union, Bagsby must show that the Company breached the Agreement and that the Union breached its duty of fair representation. Hines v. Anchor Motor Freight Co., 424 U.S. 554, 570-71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976). Unless Bagsby demonstrates both violations, he can not succeed against either party.
 
 
 21
 The first three sentences of Article 8 provide that discharges and suspensions must be for just or proven cause; that the Company must provide a written complaint; and that the employee has 10 days to respond. The next sentence, however, introduces a list of offenses for which discharges will "automatically be in effect" if "proven."[4] The list includes dishonesty and unauthorized product sales--the reasons Bagsby was discharged.
 
 
 22
 In Bagsby's view, the plain language of Article 8 indicates that the written complaint requirement applies to all discharges. If automatic discharges were meant to be exempt from the written complaint requirement, he argues, such an exception would have been stated expressly and clearly. Therefore, according to Bagsby, the only difference between a standard discharge and an automatic discharge is the timetable of implementation. A standard discharge, he contends, takes effect only after the written complaint is issued and the employee has had ten days to respond; an automatic discharge, on the other hand, takes effect immediately after the decision is made. But both require a written complaint.
 
 
 23
 In response, the Company and the Union argue that the plain language of Article 8 indicates that the written complaint requirement does not apply to an automatic discharge. To hold otherwise, in their view, would undermine the purpose and effect of distinguishing between standard and automatic discharges.
 
 
 24
 Upon a de novo review of this issue, see Teamsters Local 348 Health and Welfare Fund v. Kohn Beverage Co., 749 F.2d 315, 317-18 (6th Cir.1984), cert. denied, 471 U.S. 1017, 105 S.Ct. 2024, 85 L.Ed.2d 305 (1985) ("The construction of collective bargaining agreements ... is a question of law fully reviewable by this court."), we agree with the Company and the Union that Article 8 does not require a written complaint in an automatic discharge context.[5] First, we should hesitate to disagree with the interpretation agreed upon by both parties to the Agreement--the Union and the Company--at least where, as here, the Agreement is ambiguous on its face and the parties acted on their interpretation before the issue became a subject of litigation. Cf. Dill v. Greyhound Corp., 435 F.2d 231, 238 (6th Cir.1970), cert. denied, 402 U.S. 952, 91 S.Ct. 1622, 29 L.Ed.2d 122 (1971) (The fact that the company and the union agreed on an interpretation is persuasive concerning whether the union's failure to take the grievance to arbitration was reasonable). Second, the structure of Article 8 supports the Company and the Union. The first three sentences establish a general procedural pattern for discharge cases--a written complaint and a ten-day response period. The fourth sentence states a specific exception to that procedure which applies to complaints based on certain specified kinds of egregious behavior. That exception is immediate discharge, implying no written complaint or response period. Third, the lack of a written complaint does not deprive an automatically discharged employee of a meaningful opportunity to seek redress. Such an employee may challenge his discharge via the grievance procedure delineated in Article 7.[6] During that procedure, the Company's conduct will be judged by the strict "proven cause" standard, not merely the "just cause" standard.[7] 7] Thus, the balance between the Company's need to eliminate expeditiously egregious behavior and the employee's right to be treated fairly is struck by letting the Company dispense with a written notice and a reply period and holding the Company to the higher standard of proof in any subsequent grievance procedure.
 
 
 25
 The Company thus did not breach the Agreement by not providing Bagsby a written complaint. As a result, Bagsby's hybrid Sec. 301 claim must fail. Hence, the judgment of the district court is vacated and the case is remanded for dismissal.[8]
 
 
 26
 RYAN, Circuit Judge, concurring.
 
 
 27
 Although I agree with the court's conclusion, I do not entirely agree with the rationale in support of it and I write separately to express my understanding of the case.
 
 
 28
 My brother has written that the collective bargaining agreement provides for no written complaint in automatic discharge cases. That conclusion rests on three grounds:
 
 
 29
 First, that the court "should hesitate to argue with the interpretation agreed upon by both parties to the agreement"--the union and the company;
 
 
 30
 Second, the structure of Article VIII of the collective bargaining agreement creates a procedural pattern for discharge cases and an exception for automatic discharges--this, the court feels, implies that no written complaint or response time is necessary in automatic discharges; and
 
 
 31
 Third, because the lack of a written complaint does not deprive an automatically discharged employee of a meaningful opportunity to seek redress, the collective bargaining agreement has struck a balance between the company's need to expeditiously eliminate egregious behavior and the employee's right to be treated fairly by allowing the company to dispense with a written notice and reply period while holding the company to a higher standard of proof in any subsequent grievance procedure.
 
 
 32
 When interpreting contracts, courts look to the objectively manifested intent of the parties. Courts do not look to the subjective intent of the parties to the agreement. Thus, this court must interpret the contractual language without reference to the self-serving, after-the-fact, assertions by the union and the company as to what their subjective intent was. Dill v. Greyhound Corp., 435 F.2d 231, 237-38 (6th Cir.1970), cert. denied, 402 U.S. 952, 91 S.Ct. 1622, 29 L.Ed.2d 122 (1971), upon which the court relies for the proposition that we must hesitate to disagree with an interpretation agreed upon by the union and the company, is inapposite. Dill interpreted the contract objectively. The court's reference to the concurrence between the union and the company as to the interpretation of the contract did not concern the court's interpretation of the contract. Rather, the fact that the company and the union agreed on an interpretation was persuasive only as to whether the union's failure to take the grievance to arbitration was reasonable. Thus, the agreement between the company and the union went to the union's good faith rather than to whether the parties breached the collective bargaining agreement.
 
 
 33
 Furthermore, in this case the parties actually did not agree upon an interpretation of the contract. The union asserted, as does the majority here, that the collective bargaining agreement did not require any notice to be given in automatic discharge cases. The company, on the other hand, felt, as did the district court, that the reasonable construction to give the contract, while retaining the differentiation between automatic discharge cases and regular discharge cases, was that the written notice can be given subsequent to the discharge in automatic discharge cases while it must be provided prior to discharge in regular discharge cases (Lewis Bros.'s brief p. 15). The company argues that although the agreement required notice subsequent to the discharge, they did indeed provide that written notice.[1]
 
 
 34
 The second ground upon which the court relies, the structure of Article VIII, also does not support its construction of the contract. It is true the first three sentences of Article VIII establish a general procedural pattern for discharge cases--a written complaint followed by a ten-day response period and discharge. However, the most reasonable interpretation of the automatic discharge exception is not that automatic discharge cases require no written notice, but rather that automatic discharge cases require only written notice subsequent to discharge. In this way, the company is allowed to expeditiously eliminate egregious behavior, while the employee is still provided with a written complaint on the basis of which he can effectively respond in a grievance.
 
 
 35
 The third ground upon which the court relies, that the availability of the grievance procedure means that the lack of the written complaint does not deprive the discharged employee of a meaningful opportunity to seek redress and, therefore, that no notice is required under the agreement, is really a non sequitur. The very same grievance procedure upon which the court is relying to explain its conclusion that no written complaint need be given to automatically discharged employees serves as the grievance process for regularly discharged employees as well. The collective bargaining agreement requires a written complaint so that the discharged employee, whether regularly discharged or automatically discharged, will have some document from which he can appropriately prepare himself for the grievance procedure, and to which he can effectively respond during the grievance process. The question of whether the discharge is automatic rather than regular only affects the time of the written notice, not the requirement that one be given.
 
 
 36
 Although I disagree with the court's interpretation of the contract, I agree that the district court erred. The district court should have dismissed Bagsby's complaint because he failed to exhaust the grievance-arbitration provisions of the collective bargaining agreement. "[F]ederal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." Republic Steel Corp. v. Maddox, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965) (emphasis in original). The employee is then bound by the results of the grievance-arbitration procedure, subject to narrow review by this court, unless the employee proves the union did not fairly represent him. DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). See also Sturgeon v. Airborne Freight Corp., 778 F.2d 1154 (5th Cir.1985).
 
 
 37
 Bagsby correctly identifies an exception to the rule that an employee must exhaust the contractual remedies before bringing suit on the collective bargaining agreement. In Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the Supreme Court held:
 
 
 38
 "[T]he employee may seek judicial enforcement of his contractual rights ... if ... the union has sole power under the contract to invoke the higher stages of the grievance procedure, and if, ... the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance.... [The employer's breach could have been] remedied through the grievance process to the employee-plaintiff's benefit were it not for the union's breach of its statutory duty of fair representation to the employee."
 
 
 39
 Id. at 185, 87 S.Ct. at 914 (emphasis in original). Cf. Adkins v. International Union of Electrical, Radio & Machine Workers, 69 F.2d 330 (6th Cir.1985); Poole v. Budd Co., 706 F.2d 181 (6th Cir.1983). In this case, it was not the union that had the sole power to invoke the higher stages of the grievance procedure, rather, Bagsby, the employee, had the power to do so. Further, it was not the union's wrongful refusal to process the grievance, rather, it was Bagsby's wrongful refusal to do so and to cooperate with the union that prevented the alleged breach by the employer from being remedied through the grievance procedure.
 
 
 40
 Admitting that the union did not stymie the grievance process after he had initiated it, Bagsby argues that nonetheless he need not exhaust his contractual remedies through the grievance-arbitration process as required by Republic Steel, where taking the matter to grievance would have been futile. Exhaustion of intraunion remedies is unnecessary where the union member is challenging the conduct of the very same officers who would hear the grievance--because the effort would be futile. Fruit & Vegetable Packers & Warehousemen Local 760 v. Morley, 378 F.2d 738 (9th Cir.1967). See also Calagaz v. Calhoon, 309 F.2d 248 (5th Cir.1962). However, where the grievance-arbitration would occur through the collective bargaining agreement, a showing of hostility or malice on the part of the union, and therefore a "clear and positive" showing of futility, must be made before the court will excuse an employee's failure to exhaust. Miller v. Chrysler Corp., 748 F.2d 323, 326 (6th Cir.1984); Dill, 435 F.2d at 238. No such "clear and positive showing" of futility has been made here. See also Anderson v. Ideal Basic Indus., 804 F.2d 950 (6th Cir.1986).
 
 
 41
 Additionally, before Bagsby can charge the union with a breach of its duty of fair representation, Bagsby must have afforded the union an opportunity to represent him through the grievance process. Bsharah v. Eltra Corp., 394 F.2d 502 (6th Cir.1968). In this case, Bagsby never instituted step three of the grievance process, and never sought arbitration; rather, he relied upon his attorney and refused to cooperate with the union's attempt to represent him. Bagsby also precluded the union from proceeding with step two of the grievance process by failing to answer any of the union's questions concerning the charges against him. Bagsby thereby refused to permit the union to adequately represent him.[2]
 
 
 42
 Bagsby has, in the past, filed three grievances against the company which have been successfully processed by the union. He cooperated in processing those grievances. This is substantial evidence of the union's good faith--that it has no hostility towards Bagsby and has properly filed and pursued his grievances in the past--and demonstrates that Bagsby knew the grievance process and, by intentionally deviating from it and relying upon his lawyer's assistance rather than the union's, intentionally blocked the processing of his own grievance and precluded the union from adequately representing him.
 
 
 43
 Bagsby's failure to institute the dispute resolution mechanism of the collectively bargained agreement bars his action. Thus, I concur in the majority's conclusion that the decision of the district court must be reversed.
 
 
 
 [1]
 Bagsby did report to work the next day, June 26, 1982, and was paid for that day
 
 
 [2]
 The Union halfheartedly contends that the district court's factual finding that the Union made no request for a written notice is clearly erroneous because the finding is based on a deposition not admitted in evidence. There is ample evidence in the record, however, indicating that the Union made no request for a written notice. Moreover, the testimony on which the Union relies demonstrates, at most, only that the Union asked the Company if written notice would be provided, not that the Union affirmatively requested such action. Hence, the district court's factual finding that the Union failed to request a written notice is not clearly erroneous
 
 
 [3]
 It should be noted that the district court's view is incorrect insofar as an attorney's fee award against the Union is concerned. See Scott v. Local Union 377, International Brotherhood of Teamsters, 548 F.2d 1244, 1245 (6th Cir.), cert. denied, 431 U.S. 968, 97 S.Ct. 2927, 53 L.Ed.2d 1064 (1977)
 
 
 [4]
 The first four sentences of Article 8 of the Agreement bear repeating:
 A discharge or suspension may not be executed unless there is a just or proven cause. Such complaints must be put in writing by the Employer with copies to the salesman in question and the Union. The salesman has ten days from the date of the written notice in which to reply. Discharges will be [sic] automatically be in effect if the following items of complaint can be proven.
 
 
 [5]
 Contrary to Judge Ryan's view expressed in his concurrence in the result, the court believes the record reveals that the Company never conceded the necessity of a post-discharge written notice in an automatic discharge context. The Company's argument that a Tennessee Department of Employment Security form issued to Bagsby on July 6, 1982 satisfied any written notice requirement is merely a secondary alternative to the primary argument that the Agreement simply does not require a written notice to effectuate an automatic discharge
 
 
 [6]
 Article 7 provides, in pertinent part:
 Step 1: An employee who believes he has suffered a grievance may have the grievance presented to his supervisor by the shop steward in the employee's presence. If not satisfactorily adjusted then:
 Step 2: The business agent will take up the grievance with the Supervisor. If not satisfactorily adjusted at this stage, then:
 Step 3: The grievance shall be reduced to writing and copies delivered to the Secretary of the Local Union and the Company manager (or representative). The respective parties shall meet at a mutually agreeable place and try to adjust the matter. If not satisfactorily adjusted or settled within five (5) days at this stage then the matter shall be referred to arbitration....
 
 
 [7]
 During oral argument, the Union's counsel could not articulate the difference between "just cause" and "proven cause". Nevertheless, all the parties maintain that the latter imposes a higher standard of proof than the former
 
 
 [8]
 Given our disposition of the contract interpretation issue, we need not address the other issues raised by this appeal, including whether Bagsby exhausted his remedy of seeking arbitration
 
 
 [1]
 The district court's implicit finding that the Department of Employment Security Form did not satisfy the written complaint requirement of Article VIII was not clearly erroneous
 
 
 [2]
 A further problem with Bagsby's suit is that he instituted stage one and stage two of the grievance process solely as to the discharge. However, Bagsby does not allege that the union failed to adequately represent him in the grievance procedure regarding the discharge claim. Rather, he argues that the union failed to represent him adequately because the union failed to require the company to abide by the collective bargaining agreement's requirement of a written complaint. However, Bagsby never filed a grievance against the company for failing to provide the written complaint. Indeed, he never asserted this was a violation of the collective bargaining agreement until moments before the stage-two meeting concerning his termination. Instead of affording the union an opportunity to represent him concerning the company's failure to provide a written notice of discharge, five months after the discharge, never having spoken with the union representatives since the time of the abortive stage two discussion of the discharge, Bagsby filed a lawsuit