**Robert WINES, et al., Plaintiffs,**

v.

**FORD MOTOR COMPANY, et al., Defendants.**

**No. C 87–0002–L(A).**

United States District Court,
W.D. Kentucky,
at Louisville.

May 2, 1988.

As Corrected March 3, 1989.

**755**

David Leighty, Tilford, Dobbins, Alexander & Buckaway, Louisville, Ky., for plaintiffs.

Jon L. Fleischaker, Wyatt Tarrant & Combs, Louisville, Ky., for Ford.

Irwin H. Cutler, Jr., David W. Hupp, Marion E. Taylor Bldg., Louisville, Ky., Jordan Rossen, Richard McHugh, Gen. Counsel, UAW, Solidarity House, Detroit, Mich., for Unions.

## MEMORANDUM OPINION

ALLEN, Senior District Judge.

This action is submitted to the Court on the motion of the defendants for summary judgment. The action is brought under Section 301 of the Labor Management Relations Act, 1947 and is a hybrid duty of fair representation claim by a group of employees of the Ford Motor Company.

The plaintiffs are employees who were working at the Kentucky Truck Plant (hereinafter KTP) of Ford Motor Company when they were laid off by a reduction in force. They subsequently accepted employment at the Louisville Assembly Plant (hereinafter LAP) of Ford and are still employed at that plant. Since the time that they commenced working at the LAP, Ford has employed new employees at the KTP, and plaintiffs are asserting that they are entitled to be returned to the KTP and to assume their original seniority there.

It should be added that Ford recalled workers to the KTP who have less seniority than the plaintiffs and also hired other workers who have no seniority at KTP. When the plaintiffs sought to have a grievance filed on their behalf by Local No. 862, the local union refused to do so. After the request for a grievance was denied, the plaintiffs then appealed to the international union, which upheld the refusal of the local union to file a grievance.

The local union and the international union took the position that the collective bargaining agreement between Ford and the union specified that in order to be recalled to KTP after having been laid off from there and being hired at LAP, there had to be a layoff at LAP, upon which occasion the original KTP worker could elect to be placed on a recall list at KTP.

The union and the company both maintain that there is no breach of contract, and that, therefore, the filing of a grievance would have been a useless procedure. They point to Article VIII, Section 1(b) of the collective bargaining agreement which was dated October 14, 1984. That article provides that any employee who has basic seniority in one unit, and who is on the active employment rolls of another unit, or who is subsequently placed in another unit under circumstances where he does not carry his seniority with him, shall at his

first layoff thereafter in a reduction in force have his seniority determined by whichever of the following he then elects:

(ii) Such employee may elect to return to his basic unit, in which event he shall be placed in, or on the recall list of, his basic seniority unit with full credit for seniority accumulated while working in the other unit. . . .

The history of this portion of the collective bargaining agreement is stated in a letter from Owen Bieber, President of the International Union, addressed to Robert L. Shumate, et al. and the members of the Local Union 862 UAW, in care of David Leighty, attorney, Louisville, Kentucky. The letter is dated October 30, 1986, and Mr. Leighty is the attorney for the plaintiffs in this action. In his letter, Mr. Bieber relates that UAW had negotiated a national provision with Ford Motor to give laid off Ford workers employment opportunities in other Ford facilities. The quid pro quo was the requirement that such employee would remain in the second plant until such time as they were laid off there. This was for the purported purpose of minimizing frequent employee turnovers with accompanying loss of efficiency. As stated in the letter, "the workers did not surrender their seniority at the base plant but their right to exercise it lies dormant until they are laid off from the second unit."

The plaintiffs contend, however, that there are other provisions in the collective bargaining agreement which entitle them to the right to be recalled to the base plant before they are laid off at the secondary plant. Plaintiffs point to Article VIII, Section 18, which provides layoff in reverse order of seniority and recall in order of seniority.

Plaintiffs also rely upon Section 26 of Article VIII. That section gives Ford the right to offer work to laid off employees at an alternate plant. It concludes, "employees who refuse such offers of available work or displacement of probationary employees shall not by such refusal lose their seniority callback rights."

Plaintiffs contend vigorously that the contract contains no language which pro-

hibits a union member who has transferred from one plant to another because of a layoff at the first plant from transferring back to his original plant as soon as he wishes to once there is an increase in working force and once his seniority entitles him to employment at the original plant.

Plaintiffs contend vigorously that the basic defense of the union and the company is really one of interpretation by both of the parties of the collective bargaining agreement during their dealings with each other and that they have both erroneously interpreted the contract language. The plaintiffs also take the position that two employees, Bobby Gibson and Ermil Bogar, Jr., were recalled to their basic seniority unit even while working at a secondary unit. Plaintiffs contend that this is proof that defendant's interpretation of the collective bargaining agreement is fallacious. Defendants, on the other hand, contend that the two employees were skilled employees, and that as such, the union had agreed with the company that skilled employees who were transferred to another plant in a non-skilled classification would be deemed to have basic skilled seniority at the original plant and basic non-skilled seniority at the new plant. The plant seniority date of that employee in the new plant was to be his transfer level seniority date pursuant to the provisions of Article VIII, Section 1(c) of that agreement.

Plaintiffs also rely upon an affidavit reflecting that there were seventeen employees with basic seniority at a Norfolk, Virginia plant who transferred to a Ford plant in Atlanta and then moved back to their primary plant at Norfolk without being laid off from the secondary plant. The defendants admit that this did indeed happen but distinguished the situation from the situation of the Louisville plaintiffs in this case in that the Louisville plaintiffs are in the same area regardless of whether they work at LAP or KTP, whereas, the Norfolk employees' rights were governed by a provision which pertains to employees who are transferred from one geographic area to another.

Plaintiffs also rely upon interpretation No. 50, which is part of a union precedent manual. It provides that employees who are affected by a reduction in force in seniority units who are given available work in another unit are entitled to recall to their basic seniority unit in the same manner as they would if they were laid off on the street (unless, of course, a sufficient period passed so as to transfer their seniority to a new unit) M–1001.

M–1001 was decided long before the collective bargaining agreement between the union and Ford, but apparently the union has kept it in their precedent manual despite that fact.

Plaintiffs also rely upon an umpire's decision in Case No. 25,599, appeal E–813–75. There two employees of Ford had basic seniority in the Cleveland plant but were laid off from that plant and working on an interim basis at Ford's Sandusky plant. There the umpire held that the employees who were temporarily working in Sandusky could return to their work at Cleveland as soon as positions became available there and were not compelled to wait until they were laid off in future reduction in force in Sandusky. There the company had intended that the grievants there had to wait until they were laid off at Sandusky until they could return to Cleveland, although the company did concede that it had returned them to the Cleveland plant as an act of accommodation.

In response to the plaintiffs' position, the company has referred to HHP–1211. In HHP–1211, which is a companion case to the case cited by the plaintiffs, the umpire held that the right of an employee working in a unit other than his basic seniority unit to return to his basic seniority unit under Article VIII, Section 1(b) exists where it is first laid off in a reduction in force he elects or is deemed to have elected to return to his basic unit.

The company points out that the first decision of the umpire relied upon by the plaintiffs relates to the grievants were laid off in a force reduction at the Sandusky plant. Apparently they were not put on the recall list at the stamping plant in Cleveland but were recalled to the hardware plant at Cleveland. However, the umpire stated that they had been mistakenly recalled to the warehouse plant and were entitled to recall at the stamping plant because of the mistake on the part of Ford.

The affidavits of the movants reflect that the company and the union first put into effect the provisions now contained in Article VIII, Section 1(b) in 1959. On two occasions since 1976, the union has tried unsuccessfully to pursuade the company to repeal or delete that provision. It goes without saying that if they had been successful, there would have been no law suit since the plaintiffs would have been entitled to be recalled to their basic unions as soon as positions became open for them.

It should be noted also it is not the duty of the Court to determine whether the provision in the collective bargaining agreement is unfair to the plaintiffs. Courts do not interfere with the collective bargaining process.

In a fair representation suit such as the case at bar, it is the plaintiffs' duty to prove that the company breached a collective bargaining agreement, and that the union violated its statutory duty of fair representation by "arbitrary, discriminatory, or bad faith" conduct. See *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). While the two causes of action embodied in a fair representation suit are conceptually distinct, they are also inextricably independent. See *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1963, quoting *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981).

It has also been held that the fact that a "company breaches a labor contract does not constitute a per se breach of the duty of fair representation simply because the union failed to grieve. See *Griesmann v. Chemical Leaman Tank Lines, Inc.*, 776 F.2d 66, 74 (3rd Cir.1985). The great majority of courts deciding fair representation cases have approached them first from the point of view of the duty of fair representation. We shall follow the examples of the

majority and look to the evidence to determine if there is any evidence of arbitrary, discriminatory or bad faith conduct on the part of the union. We look also at the evidence to see if the plaintiff has presented any evidence of "unexplained union inaction, amounting to arbitrary treatment." See *Ruzicka v. General Motors Corp.*, 528 F.2d 912 (6th Cir.1975).

In the case of *Bagsby v. Lewis Brothers, Inc. of Tennessee*, 820 F.2d 799 (6th Cir. 1987), the court held, among other things, that it "should hesistate to disagree with the interpretation agreed upon by both parties to the Agreement—the Union and the Company—at least where, as here, the Agreement is ambiguous on its face and the parties acted on their interpretation before the issue became a subject of litigation," citing *Dill v. Greyhound Corp.*, 435 F.2d 231, 238 (6th Cir.1970), *cert. denied*, 402 U.S. 952, 91 S.Ct. 1622, 29 L.Ed.2d 122, (1971). Immediately following the citation of *Dill* appear the following words: "(The fact that the company and the union agreed on an interpretation is persuasive concerning whether the union's failure to take the grievance to arbitration was reasonable)."

Judge Ryan, in his concurring opinion, points out that "the fact that the company and the union agreed on an interpretation was persuasive only as to whether the union's failure to take the grievance to arbitration was reasonable." The question of the proper interpretation of the contract is for the court to look to "the objectively manifested intent of the parties," and not to their "subjective intent." See *Bagsby, supra*, at 803.

The *Bagsby* court relied upon *Dill, supra*, as authority for its holding that it should not disagree with the parties interpretation of their collective bargaining agreement. In *Dill*, plaintiff was an employee of Greyhound, who was a member of Local Union 1500, and who brought suit against Greyhound, the local union and the AFL–CIO Southern Council under 29 U.S. C. § 185. The collective bargaining agreement provided that the seniority rank of operators was to be determined as to the simultaneous graduation from driver's school by the hour and date of application

for employment. Greyhound made arrangements with an independent contractor, PTI, to conduct the training school at Atlanta. The applicants for jobs with Greyhound were required to pay PTI $35 a day for instruction at the school.

Dill has made application to Greyhound for employment in September 1963. He was then required to make application to PTI, which he did on February 28, 1964. Prior to the beginning of the first class, Greyhound decided to use the dates and hours on the PTI application instead of those on the Greyhound applications. It advised Local 1500 of this procedure and placed a notice on the school's bulletin board in March 1964.

Dill's application date to PTI was used for purposes in determing his seniority, whereas he contended that the date he applied with Greyhound should have been used. He filed a written grievance with the local union and was advised that two other persons had filed similar grievances, whose outcome would govern the disposition of his case.

The grievances of the other two applicants were denied, and the Court of Appeals held that Greyhound's decision to treat applications filed with PTI for the purposes of determining seniority was not an unreasonable construction of the collective bargaining agreement.

With regard to the union, the court held that the parties' interpretation of the collective bargaining agreement was reasonable, and that the district court was in error in holding that the Southern Council had acted arbitrarily and in reckless disregard of Dill's rights.

We hold in the case at bar that the union and the company's interpretation of the collective bargaining agreement was not unreasonable. We also find that a court looking at the collective bargaining agreement objectively could determine that the contract was to be interpreted in the way the union and the company have insisted it should be. That being true, we do not believe that the union was guilty of arbitrary conduct, malicious or bad faith conduct, nor do we believe the inaction of the union amounted to arbitrary conduct.

We note that the plaintiffs are alleging that the union acted in bad faith towards them because one of the plaintiffs was a candidate for president of the union and was defeated by a person who refused to take plaintiff's grievance to arbitration. We do not believe that this is sufficient evidence to show any bad faith on the part of the union.

As noted before, the remedy of plaintiffs lies through their use of the collective bargaining agreement process. They will have the opportunity at the next collective bargaining agreement negotiations to make their point that Article 8, Chapter 2 is unfair in that it prevents them from exercising their seniority rights as soon as a new job becomes available at the basic unit.

Summary judgment has been entered in accordance with this opinion.

### ORDER

This matter having come before the Court on defendants' motion for summary judgment, and the Court having entered its memorandum opinion,

IT IS ORDERED that defendants' motion for summary judgment is hereby granted.

This is a final and appealable order and there is no just cause for delay.