961 F.2d 1579
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James C. SWAFFORD, Plaintiff-Appellant,
Lewis C. Wicks; D.A. Sherlin; Samuel R. Hays; Hassell N.
Thomas; Ronald L. Poole; Howard K. Lerch;
Lavern Steele; Raymond L. Combs; E.H.
Kuykendall, Plaintiffs,
v.
COMBUSTION ENGINEERING, INC.; International Brotherhood of
Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and
Helpers; International Brotherhood of Boilermakers, Iron
Ship Builders, Blacksmiths, Forgers and Helpers, Subordinate
Lodge No. 656, Defendants-Appellees,
Pension Plan for Employees of Combustion Engineering, Inc.,
Defendants.
 No. 91-5776.
 United States Court of Appeals, Sixth Circuit.
 April 22, 1992.
 
 Before KENNEDY and SILER, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiff Swafford appeals the District Court's dismissal of an action arising under ERISA and the Labor Management Relations Act.[1] We find that the District Court properly interpreted the language of the contract and did not err in finding the company and union had reached an understanding of the language's meaning. We therefore AFFIRM the holding of the District Court.
 
 
 2
 During the late 1950's and 1960's, Combustion Engineering laid off several hundred employees. These employees were members of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, the parent union of Subordinate Lodge No. 656. Employees on layoff collected six months pension credit and seniority credit for the entire time of the layoff. To remain on layoff status and retain seniority and recall rights, the company required the employees to follow certain contractual rules. Employees who failed to follow these rules, or who did not return when recalled, or were terminated from employment lost all accrued seniority and pension credit. If these employees were rehired, they were treated as new hires with no seniority or pension credit.
 
 
 3
 Time lost due to the layoffs greater than six months could not be used in calculating the date of the vesting of pension benefits or the amount of the benefits. This became a concern as employees who had been laid off during the 1950's and 1960's neared retirement age. Efforts were made in 1977 and 1980 to get the company to give full credit for the period of layoff, but the company rejected the proposals. In 1983, the union again made efforts to negotiate credit for the time lost. Although no concrete proposal was adopted during the 1983 negotiations, the union and the company agreed that, if a plant shut down during the duration of the agreement, interrupted service prior to June 1, 1965 would be counted for pension eligibility. The company provided the union with a list of employees that it believed would be covered in such a situation. The list included those employees who maintained their seniority and six months of pension credit following the layoffs because they followed the contractual rules for laid off employees and returned to work when recalled. The 1958-60 Bargaining Agreement required laid off employees to send an annual registered letter to the company expressing continued interest in the employment. Swafford sent no such letter and was therefore terminated on August 8, 1959. Swafford was rehired in 1965 and given a new seniority date. Because of his termination, Swafford's name was not included on the list. Employees who had complied with the contracted rules during layoff retained their original seniority date.
 
 
 4
 During the 1985 contract negotiations, the union again sought provisions which would address pension eligibility and service bridging. The following language was eventually accepted by the union and ratified by the employees:
 
 
 5
 C. SERVICE BRIDGING: Employees actively employed at the Chattanooga Works on September 8, 1985, who were laid off prior to June 1, 1965, and because of such layoff have interrupted service for pension purposes, shall have such prior service counted for pension eligibility and benefit purposes.
 
 
 6
 Plaintiff disputes that the negotiators intended that the "interrupted service" term which appeared in the proposals not include employees who had broken service whether by failing to follow the contractual rules, not responding when recalled, or by being terminated.
 
 
 7
 In 1987, having been informed by the company that they were not included in those employees eligible for service bridging, the plaintiffs in this case filed a grievance with the union. The plaintiffs alleged that the company violated the collective bargaining agreement by not applying the pension bridging provisions to them. The union investigated the grievance and decided not to take the issue to arbitration. This decision was based on the fact that the union believed that there would be little chance of success at arbitration. It was also motivated by the fact that the union was currently in negotiations with the company during which it hoped to extend the pension benefits to the plaintiffs. The plaintiffs then filed this lawsuit on April 8, 1988. The District Court granted a partial summary judgment for the union on plaintiff's claim that the union breached its duty of fair representation during the 1985 negotiations and ratification meeting. No appeal was taken from that order. Following a trial, the District Court in a memorandum and judgment filed April 5, 1991, dismissed the remaining issues in the case, holding that the company had not breached the collective bargaining agreement, nor had the union breached its duty of fair representation to the plaintiffs in handling the grievances filed. Plaintiff Swafford now appeals the April 5, 1991 decision.
 
 
 8
 We turn first to the issues tried by the District Court. The District Court's findings of fact are not to be set aside "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed.R.Civ.P. 52(a). A finding of fact will only be clearly erroneous when, although there is evidence to support it, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).
 
 
 9
 Swafford asserts Combustion Engineering breached the contract it negotiated with the union by denying Swafford pension credit. The resolution of this dispute centers on the definition of the language "interrupted service" in the service bridging provision of the contract. Swafford contends that all persons who were laid off are entitled to pension credit regardless of whether they protected their recall rights.
 
 
 10
 During the 1985 negotiations, the union proposed broader language than the 1983 contract which limited pension credit to those employees with "interrupted service." This broader language would have ensured pension credit for all employees who had experienced a period of layoff including plaintiff. Various proposals by both the union and the company were considered. The company consistently rejected the broad language of the union proposals. Eventually the language quoted above was adopted. The District Court found that "[a]t the conclusion of the 1985 negotiations, it was well understood between the Company and the Union that the above language did not alter the plaintiffs' eligibility for pension." Testimony presented at trial indicates that the broad language proposed by the union was an attempt to have the company cover employees in Swafford's position. The consistent rejection of these proposals indicates an unwillingness to provide such coverage. Trial testimony also reveals that the union representatives knew that the company's list of employees subject to the service bridging provisions did not include Swafford and other similarly situated employees. The list of employees eligible for service bridging compiled at the time of the 1983 negotiations was also used to catalog those employees eligible for service bridging under the 1985 contract. Because evidence supports the District Court's finding that the parties had not agreed to include employees in plaintiff's situation, no breach of contract occurred. The District Court's findings with respect to the intent of the parties are not clearly erroneous. Indeed, the record directs such a finding.
 
 
 11
 A bargaining union's duty of fair representation requires it to "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171, 177 (1967). In order for Swafford to succeed on his hybrid section 301 action, he must establish both a breach of the union's duty of fair representation and that the company violated section 301 by breaching the collective bargaining agreement. Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 566 (1976); Bagsby v. Lewis Bros., 820 F.2d 799, 801 (6th Cir.1987).
 
 
 12
 The plaintiff's claim for breach of the duty of fair representation arises from the failure of the union to take the plaintiffs' grievance to arbitration. Based on the factual conclusions reached by the District Court, no successful grievance by the union was possible. Such an action would have required it to deny attempting to negotiate language which did include the plaintiff since such negotiations would be unnecessary if the plaintiffs were already included under the adopted language. The District Court found that "[t]he Union's considered decision here not to take the case to arbitration was neither arbitrary, discriminatory nor in bad faith." We agree. The union was not required to insist on an interpretation of the contract to which it knew the parties had not agreed.
 
 
 13
 Swafford also asserts a claim under ERISA. ERISA requires that all benefit plans be outlined in a written instrument and specify the basis for payments under the plan. 29 U.S.C. § 1102(a)(1). Plaintiff asserts that reading the term "interrupted service" not to include his situation is at odds with the plain meaning of the term. The facts indicate the company and the union were in agreement as to what they meant by "interrupted service" and who was covered under the provisions of the contract. Since Swafford was never an intended beneficiary of the service bridging contract provision, he cannot now claim protection under the adopted language. We therefore find no merit to plaintiff's claim under ERISA.
 
 
 14
 For the reasons stated above, we AFFIRM the decision of the District Court.
 
 
 
 [1]
 Fed.R.App.P. 3(c) states that a notice of appeal must specify the party or parties making an appeal. This Court has determined that the use of the term "et al" in the notice of appeal, as well as the reference to plaintiffs in the body of the appeal, is insufficient to preserve issues on appeal for parties not listed by name. Minority Employees of Tennessee Dep't. of Employment Security v. Tennessee Dep't. of Employment Security, 901 F.2d 1327, 1330 (6th Cir.) (en banc), cert. denied sub. nom., Davis v. Tennessee Dep't. of Employment Security, 111 S.Ct. 210 (1990) (relying on Torres v. Oakland Scavenger Co., 487 U.S. 312 (1988)). The notice of appeal in this case only mentions James C. Swafford by name. Swafford therefore is the only plaintiff who has successfully preserved the issues in the case for appeal