45 F.3d 430
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Leon DRAKE, Plaintiff-Appellant,
v.
INTERNATIONAL PERMALITE, INC., and Local 1299 United
Brotherhood of Carpenters and Joiners of America,
AFL-CIO, Defendants-Appellees.
 No. 93-6256.
 United States Court of Appeals, Sixth Circuit.
 Dec. 29, 1994.
 
 Before: WELLFORD, RYAN, and BATCHELDER, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff, Leon Drake, appeals from the district court's entry of judgment as a matter of law in this Sec. 301 action under the Labor Relations Act, 29 U.S.C. Sec. 185(a), for wrongful discharge and unfair representation. We are asked to determine whether the district court erred (1) in holding that the plaintiff was discharged for good cause under the collective bargaining agreement; (2) in holding that the defendant union did not breach its duty of fair representation by refusing to arbitrate the plaintiff's grievance; (3) in applying the wrong legal test when determining whether the union breached its duty to the plaintiff; and (4) in limiting the plaintiff's evidence regarding the hostility between the plaintiff and the union.
 
 
 2
 We conclude that the district court did not err in granting judgment as a matter of law for the defendants because the plaintiff was discharged for good cause. Accordingly, the judgment of the district court is affirmed.
 
 I.
 
 3
 Plaintiff, Leon Drake, was an employee of the defendant, International Permalite, Inc. While an employee at Permalite, Drake was a member of Local No. 1299, United Brotherhood of Carpenters and Joiners of America. The collective bargaining agreement provides for termination upon just cause.
 
 
 4
 During his employment, Drake was subject to various disciplinary actions. On June 8, 1988, he was reprimanded for absence, tardiness, and/or leaving work early an excessive number of times. On February 6, 1989, he was reprimanded and given a three-day suspension for insubordination for refusing a direct order of a supervisor to work overtime. Drake was notified that similar behavior could result in his discharge. On March 28, 1989, he was given a written reprimand for taking more than the allotted time for lunch break and was again notified that additional violations could result in his discharge. On August 21, 1989, Drake was given a five-day suspension for insubordination for refusing a direct order of a supervisor to work four hours overtime.
 
 
 5
 The last incident that occurred prior to Drake's firing was on May 25, 1990, when he was asked to attend a meeting with Permalite and Union representatives. On that day, Drake reported to work at approximately 2:45 p.m. His shift began at 3:30 p.m. At approximately 3:00 p.m., foreman, Gary Smith, approached Drake and told him that Joe Hamelin, the plant superintendent, wanted to have a meeting with him in the foreman's office. Drake was not feeling well that day and told Smith that he was not willing to go to the meeting, that he was not prepared for it, that he did not want to put up with any harassment, and that he did not want to meet with Hamelin on his own time.
 
 
 6
 When Drake refused to attend the meeting, Smith went into the foreman's office. When he came back out, he told Drake that Hamelin wanted to meet with him immediately. Drake then said he did not want to attend the meeting on his own time, but he would attend at 3:30 p.m., his scheduled starting time. After talking with Hamelin again, Smith told Drake that the meeting would take place at 3:30 p.m.
 
 
 7
 The second shift steward, James Fugate, went to talk to Drake sometime between 3:00 and 3:30 p.m. When Fugate was called to do some maintenance work at the other end of the plant, Fugate allegedly told Drake, "Don't go into the meeting until I get back." Drake stated at trial that when Fugate did not return to him at 3:30 p.m., he went to his work station, about 75-80 feet from the superintendent's office, and began work. He did not go into the superintendent's office and he did not look through the large picture window outside the office to see if Fugate was in the office. Fugate stated that he was in the office at 3:30 p.m.
 
 
 8
 Gary Poole and Fugate went to Drake's work station to summon him one last time for the requested meeting. Drake informed him that he was injured and needed medical attention. Drake left the plant due to his injury and did not return until June 11, 1990. When he returned to work, Drake was discharged for insubordination in refusing the direct order of a supervisor.
 
 
 9
 The district court granted judgment as a matter of law for both of the defendants, stating:
 
 
 10
 I think there was just cause of discipline. He had these previous violations. The discipline that they imposed they had a right to impose.
 
 II.
 
 11
 The 1991 amendments to the Federal Rules of Civil Procedure replaced the term "directed verdict" with "judgment as a matter of law." Fed.R.Civ.P. 50(a). Because it is a legal question, the district court's grant or denial of a motion for a judgment as a matter of law is reviewed de novo. This court must apply the same legal standards as the district court. That is, we view all the evidence in the light most favorable to the nonmoving party, and we give the nonmoving party the benefit of all reasonable inferences. Only where no reasonable juror could find for the nonmoving party is judgment as a matter of law appropriate. Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1081 (6th Cir.1994).
 
 
 12
 In order to prevail in suit under Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, against either Permalite or the Union, the plaintiff must prove both a breach of the collective bargaining agreement by Permalite in firing him and a breach of the duty of fair representation by the Union. Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 564 (1990); Bagsby v. Lewis Bros., 820 F.2d 799, 801 (6th Cir.1987).
 
 
 13
 Even viewing the evidence in a light most favorable to Drake, no reasonable trier of fact could find that Permalite did not have just cause to fire him. The evidence shows that Drake was reprimanded and/or received suspensions on four occasions prior to the incident on May 25, 1990. These included the serious infractions of absence, tardiness, and/or leaving work early an excessive number of times; insubordination for refusing a direct order of a supervisor to work overtime; taking more than the allotted time for lunch break; and refusing a direct order of a supervisor to work four hours overtime.
 
 
 14
 Then, on May 25, according to the evidence, Drake refused to attend a meeting after being requested to do so four times. First, he refused when the foreman, Gary Smith, approached Drake and told him that Joe Hamelin, the plant superintendent, wanted to have a meeting with him in the foreman's office. Drake was not feeling well that day and told Smith that he was not willing to go to the meeting, that he was not prepared for it, that he did not want to put up with any harassment, and that he did not want to meet with him on his own time.
 
 
 15
 He refused for the second time when Smith went into the foreman's office, came back out, and told Drake that Hamelin wanted to meet with him immediately. Drake said he did not want to attend the meeting on his own time, but he would attend at 3:30 p.m., his scheduled starting time.
 
 
 16
 Drake refused a third time when, after Fugate did not return to him at 3:30 p.m., he went to his work station, about 75-80 feet from the superintendent's office, and began work instead of attending the meeting.
 
 
 17
 Drake refused a fourth time when Gary Poole and Fugate went to Drake's work station to summon him one last time for the requested meeting. Drake informed him that he was injured and needed medical attention. Thus, Drake refused the direct orders of a supervisor four times. Refusing the direct orders of a supervisor is insubordination and is just cause for termination.
 
 
 18
 Even if we take as true Drake's statements that he would have gone to the meeting if Fugate had returned to accompany him, his failure to go to the office or even to look through the large picture window in the office to see whether Fugate was in the office are consistent with his earlier statements that he simply did not want to go to the meeting. Drake's actions support the inference that he used Fugate's nonappearance as an excuse for not attending the meeting.
 
 
 19
 Therefore, the district court did not err in holding that Permalite's firing of Drake was for just cause. This being so, we need not address whether the Union breached its duty to Drake when it decided not to submit his grievance to arbitration or the other issues plaintiff raises because the plaintiff must prove a firing without just cause to prevail in a Sec. 301 suit.
 
 III.
 
 20
 Accordingly, the judgment of the district court is AFFIRMED.