64 F.3d 663
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Rickie E. HESTER, Plaintiff-Appellant,
v.
THOMAS & BETTS HOLDINGS, INC. and International Brotherhood
of Electrical Workers, Local 175, Defendants-Appellees.
 No. 94-5794.
 United States Court of Appeals, Sixth Circuit.
 Aug. 17, 1995.
 
 Before: KENNEDY, WELLFORD AND SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Rickie Hester brought this action pursuant to Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, alleging that defendant International Brotherhood of Electrical Workers, Local Union No. 175 ("Union") breached its duty of fair representation by deciding not to pursue to arbitration a grievance filed by Hester following his discharge for fighting. Hester also alleged that his former employer, Thomas & Betts Holdings, Inc. ("Company"), breached the collective bargaining agreement between the Company and the Union by discharging him. The District Court granted summary judgment in favor of the Union and as a result of that judgment, in favor of the Company as well. Hester now appeals, arguing that material facts in the record support his claim. For the following reasons, we affirm.
 
 I.
 
 2
 Hester was employed by the Company at its manufacturing facility in Athens, Tennessee. On February 4, 1992, the Company fired Hester and Mark Borden for fighting in violation of the rules contained in the collective bargaining agreement. The agreement provided that discharge is generally the penalty for fighting.
 
 
 3
 Hester and Borden both filed grievances. Jim Frye, the Union's Chief Shop Steward at the Athens facility, investigated and discovered the following information. Borden's account of the incident was that on January 24, 1992, he and plaintiff got into a dispute at work as a result of gambling by flipping for quarters. Co-worker Melvin Martin confirmed that Borden and plaintiff were gambling and that Hester got angry. According to Borden and Martin, Hester then followed Borden into the restroom, banged on his stall door, and yelled for him to come out and fight. Martin was in the restroom at the time and intervened to encourage plaintiff to drop the matter. Borden said that Hester approached him on the work floor later that day and hit him. Co-worker Tracy Queen saw Hester and Borden arguing with clenched fists and came off his line and stepped between them. Queen did not see any blows exchanged, but admitted he had not been constantly watching them.
 
 
 4
 Borden said that Hester was waiting for him after work and wanted to meet somewhere to settle their dispute. On January 28, 1992, Borden saw Hester at a gas station. Borden said that Hester approached him, slapped him, and that he pulled a gun on Hester. When Borden got home, he called his supervisor, Dennis Frank, and told him what had happened at work and at the gas station.
 
 
 5
 According to Hester, no blows were struck on company property. Although he admitted that he and Borden had had words at work, he denied gambling and denied threatening Borden. Hester acknowledged that he and Borden talked at the gas station and that Borden pulled a gun on him.
 
 
 6
 Following his investigation, Frye presented the results of his investigation to the Union Executive Committee for the Athens bargaining unit and the committee voted to recommend arbitration of both grievances. Frye then provided Bob Foster, the Union Business Manager, with the results of the investigation and the recommendation of the Executive Committee.
 
 
 7
 Foster determined that there was little likelihood of success on the merits and decided against arbitrating either grievance. Foster concluded that Borden told the truth about the fight because he did not think Borden would lie about fighting knowing that fighting could cost him his job. Foster also felt that Hester and Borden's conduct at the gas station would undercut the Union's argument to the arbitrator for leniency. Frye then signed off on the grievances with prejudice.
 
 
 8
 Hester then filed the instant action and defendants filed motions for summary judgment. The District Court granted the motions.
 
 II.
 
 9
 We review a District Court's grant of summary judgment de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine issue of fact exists for trial only if the evidence, viewed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-51 (1986).
 
 
 10
 When an employee sues a union for breach of the duty of fair representation, it is not enough simply to show that the underlying grievance was meritorious. Vaca v. Sipes, 386 U.S. 171, 191 (1967). Rather, the employee has the burden of showing that the union has acted toward the employee in a manner that is "arbitrary, discriminatory or in bad faith." Id. at 190.
 
 
 11
 Hester argues that the Union acted arbitrarily in failing to pursue his grievance to arbitration because it did not talk with Larry Eaton, a witness to the events at the gas station. Eaton had not seen blows exchanged, but saw Borden threaten Hester with a gun. The Union admits that no one talked to Eaton. Hester also argues that the Union should have attended the preliminary hearing held on a warrant Borden sought against Hester in relation to the gas station incident. Hester contends that it should have been clear from the hearing that Borden was lying, especially because the court dismissed the charge.
 
 
 12
 Although a union has a duty to investigate grievances, this duty is not breached unless the union would have obtained information that probably would have affected the outcome of plaintiff's grievance. See Higdon v. United Steelworkers, 706 F.2d 1561, 1562 (11th Cir.1983); cf. Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573 (6th Cir.1994) (failure to present favorable evidence during grievance process only breach of duty if different decision would probably result). There is no likelihood that the grievance would have been handled differently had the Union interviewed Eaton or attended the hearing. Hester was discharged for fighting at work, not for fighting at the gas station. The incident at the gas station was only relevant as it related to whether the Company or the arbitrator might find discharge too severe a penalty. When the animosity continued beyond the workplace, it was unlikely that suspension without pay would be the sanction imposed. Hester had admitted that he confronted Borden at the gas station to give him an "ass whipping," so it is unlikely that Eaton's testimony would have helped to mitigate the penalty. Although Hester contends that Eaton's story was important with respect to Borden's credibility, Eaton had not been constantly watching Borden and Hester and thus his testimony could not definitively establish that Borden lied about Hester slapping him.
 
 
 13
 Hester next contends that the Union breached its duty because Frye held personal animosity towards him. Hester points to Borden's statement that after the decision was made not to arbitrate the grievances, Frye told him that he "[didn't] care much" for Hester. (Joint App. 383). Hester also notes that Russell Levine and Robert Riden, Executive Committee members, indicated in their depositions that they felt that Frye did not like Hester.[1]
 
 
 14
 We recently held, in a case involving the union's representation during an arbitration, that "[p]ersonal hostility is not enough ... to establish a prima facie case of unfair representation in a union member's discharge if the union's representation during the disciplinary steps is adequate and there is no evidence that the personal hostility tainted the arbitrators' decision." VanDerVeer v. United Parcel Service, Inc., 25 F.3d 403, 405 (6th Cir.1994).
 
 
 15
 Assuming, arguendo, that Frye did not like Hester, it was Foster who made the decision not to take the grievance to arbitration and there is no evidence that Frye tainted this decision. As noted earlier, Hester has produced no evidence that further investigation by Frye would have affected the outcome of his grievance. Although Frye gave Foster his opinion that the grievance should not be taken to arbitration, Foster testified he reached this conclusion based on the facts before him.
 
 
 16
 Hester contends that Frye tainted Foster's decision by concealing from Foster the fact that Borden did not report the fight at work until after the incident at the gas station. Foster had Frye's notes from the investigation which showed the lapse in time. Thus, there was no concealment. Any failure on the part of Frye to bring this to Foster's attention cannot alone support a finding that the Union breached its duty of fair representation.
 
 
 17
 Finally, Hester contends that there is a material issue of fact as to whether Frye had the authorization of Foster to drop the grievance. According to Hester, Frye should have taken further action because, after Frye talked with Foster, a meeting was held between Frye, Borden, and the Executive Committee to discuss pursuing the grievances. We agree with the District Court that the evidence of this meeting does not create an issue for trial. It is undisputed that Foster had the sole authority to determine that Hester's grievance would not be arbitrated and it is clear from the record that Foster made this decision. Any acts that Frye might have taken thereafter were thus without authority.
 
 III.
 
 18
 Plaintiff's claim against the employer is dependent on his establishing the union's breach of the duty of fair representation. Thus, summary judgment for the company was appropriate. Bagsby v. Lewis Bros., Inc., 820 F.2d 799, 801 (6th Cir.1987).
 
 
 19
 For the foregoing reasons, we AFFIRM the District Court's grant of summary judgment.
 
 
 
 [1]
 There is evidence to the contrary. Frye denied making the statement to Borden or having ill will towards Hester. (Joint App. 568-69). Hester himself stated that he and Frye were "working friends." (Joint App. 587). Riden's opinion was based on his erroneous belief that Hester was not a union member and Riden thought Frye did not like non-union members