870 F.2d 657
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Helen K. BALL, Plaintiff-Appellant
v.
PET, INC., GROCERY PRODUCTS DIVISION, and Oil, Chemical and
Atomic International Union and its Local No. 3-65,
Defendants-Appellees.
 No. 88-5796.
 United States Court of Appeals, Sixth Circuit.
 March 13, 1989.
 
 Before WELLFORD and ALAN E. NORRIS, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Helen K. Ball appeals from a grant of summary judgment in favor of Pet, Inc., Grocery Products Division ("Pet") and the Oil, Chemical and Atomic Workers International Union and its Local No. 3-65 ("the Union") in this hybrid breach of contract/unfair representation action under Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185. For the reasons discussed below, we affirm the decision of the district court.
 
 
 2
 * On October 14, 1986, Ball was terminated from Pet after almost ten years of service. The events leading to her termination began on September 8, 1986, when Ball reported to the plant manager, Lenard F. Heckert, that $640, as well as several pages from a personal diary had been stolen from her locker while she was on vacation. She related to Heckert and an assistant production manager, Richard Benton, that she suspected Eddie Hall, a fellow employee, of taking her property. Ball gave a letter to Heckert that Hall had supposedly written to her in which she claimed that he admitted taking the money. Heckert testified by affidavit, however, that the letter contained no such admission.
 
 
 3
 Ball next presented Heckert with her handwritten statement wherein she claimed that Hall had visited her home, admitted to the theft, and offered to repay the money in installments. When Heckert confronted Hall, he denied taking the money or offering to repay it.
 
 
 4
 On September 21, 1986, Ball's husband, Danny Ball, telephoned both Benton and Heckert and told them that his wife had received the money back. He told the Pet officials that he had received a phone call from Hall, and that Hall allegedly told him to take his wife to a local park to get her money back. Mr. Ball stated that he and his wife went to the park and someone from another car threw money into their car. When asked who threw the money into their car, Mr. Ball responded, "Eddie Hall."
 
 
 5
 A few days later, both Helen and Danny Ball met with the local police and related the same story with one exception: they did not identify Eddie Hall as the person who threw the money into their car. The police eventually terminated their investigation, and according to Heckert's affidavit, it was because there were too many inconsistencies in the Balls' story.
 
 
 6
 Nevertheless, Pet continued to investigate the matter. Pet officials conducted separate interviews with both Helen and Danny Ball. Present at those interviews were two officials from corporate headquarters, Benton, and the president of the local union, Bobby Orrick. Helen was the first to be interviewed, and she related the same story that she told the local police. Again, she did not identify Eddie Hall as the person who allegedly returned the money to her in the park.
 
 
 7
 Danny Ball was next interviewed and initially reiterated the same story. Upon further questioning, however, he admitted that the story was not true. There was no telephone call, they did not go to the park, and they did not get the money back.
 
 
 8
 After Danny's revelation, the Pet officials decided that the Balls' conduct warranted discharge pursuant to Article IX of the collective bargaining agreement. Article IX reads in pertinent part:
 
 
 9
 The Employer shall have the right to discharge any employee for just cause without enumerating all, or in limitation of the generality; but, merely for the purpose of serving as typical grounds justifying discharge, the following shall be considered as just cause for discharge ... dishonesty ... no employee shall be discharged without at least one (1) warning notice to the Union and the employees involved, except in cases of ... dishonesty....
 
 
 10
 In the presence of Orrick, the Union representative, the Balls were told that they could either quit or be fired. Helen said that she would quit and allegedly signed a piece of paper so indicating. There is some dispute regarding whether the paper was blank when she signed it, whether she knew what she was signing, or whether she was under duress when she signed it. However, for purposes of this appeal, we assume that she was fired.
 
 
 11
 At Orrick's request, Pet officials mitigated Mr. Ball's discipline to a thirty-day suspension. The stated reasons for the disparate treatment were that Mr. Ball did not instigate the hoax and that he was the one who eventually told the truth. Nonetheless, he filed a grievance against Pet, which was viewed as a breach of the mitigation agreement, and he was terminated. Mr. Ball filed another grievance that proceeded to arbitration, and the arbitrator determined that his dishonesty was just cause for termination under the collective bargaining agreement. Helen Ball also filed a grievance that the Union decided not to pursue, reasoning that she had quit her job and was not fired.
 
 
 12
 As a result of these events, Helen Ball filed this hybrid Sec. 301/unfair representation suit in district court. The trial judge granted summary judgment in favor of Pet and the union based upon Ball's admissions of dishonesty in her depositions. The court concluded that there was no issue of fact concerning whether she had been dishonest with Pet officials and therefore terminated for just cause. Ball has appealed from that determination.
 
 II
 
 13
 Upon review of a grant of summary judgment, the same standard as originally applied by the district court is employed. Hines v. Joy Mfg. Co., 850 F.2d 1146, 1149 (6th Cir.1988). The moving party must point to an "absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The burden then falls upon the nonmovant to produce some evidence that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
 
 
 14
 In order for an employee to prevail on either claim of a hybrid Sec. 301/unfair representation claim, she must establish both that the company wrongfully terminated her and that the Union breached its duty of fair representation. Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570-71 (1976); Bagsby v. Lewis Brothers, Inc., 820 F.2d 799 (6th Cir.1987). Indeed, "the case [an employee] must prove is the same whether he sues one, the other, or both." DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 165 (1983).
 
 
 15
 The reason for this dual hurdle is that congressional policy indicates that grievances should be resolved in accordance with the procedures contained in a collective bargaining agreement. 29 U.S.C. Sec. 173(d). That policy may only be furthered if the courts abstain from resolving disputes properly decided in accordance with contractually prescribed methods. Hines, 424 U.S. at 562-63. Therefore, courts will not ordinarily usurp the dispute resolution means included within a collective bargaining agreement. Id.
 
 
 16
 There is an exception to this policy of deference founded upon the injustice that would occur if an employee was precluded from pursuing her contractually prescribed remedy because the union acted in a "discriminatory, dishonest, arbitrary, or perfunctory fashion" in pursuing her grievance. DelCostello, 462 U.S. at 164.
 
 
 17
 In such a situation, an employee may sue the company and the union, but in order to prevail against either, she must show both that the company breached the agreement and that the union breached its duty of fair representation. Bagsby, 820 F.2d at 801 (citing Hines, 424 U.S. at 570-71). Thus, Ball's claims against Pet and the union are "inextricably interdependent." DelCostello, 462 U.S. at 164. She must establish both that she was terminated without just cause by Pet and that the union breached its duty of fair representation by failing to pursue her grievance to arbitration in order to prevail.
 
 III
 
 18
 Ball's theme on appeal is that there remained a genuine issue of fact with regard to whether the union breached its duty of fair representation. She contends that the union acted arbitrarily, discriminatorily, and in bad faith by failing to take her grievance to arbitration. She argues the union acted in a perfunctory manner as evidenced by its alleged failure to consult with her prior to the interview with Pet officials, as well as its alleged failure to investigate her claim.
 
 
 19
 The duty of fair representation imposes three requirements upon a Union:
 
 
 20
 [f]irst, it must treat all factions and segments of its membership without hostility or discrimination. Next, the broad discretion of the Union in asserting the rights of its individual members must be exercised in complete good faith and honesty. Finally, the Union must avoid arbitrary conduct. Each of these requirements represents a distinct and separate obligation, the breach of which may constitute the basis for a civil action.
 
 
 21
 Ruzicka v. General Motors Corp., 523 F.2d 306, 309-10 (6th Cir.1975), cert. denied, 464 U.S. 982 (1983) (quoting Griffin v. International Union of United Automobile Workers, 469 F.2d 181, 183 (4th Cir.1974)).
 
 
 22
 An individual employee does not have an absolute right to have a grievance taken to arbitration. Vaca v. Sipes, 386 U.S. 171, 191 (1967). Through the normal settlement process, "frivolous grievances are ended prior to the most costly and time-consuming step in the grievance procedures." Id. Given Ball's admissions of dishonesty--which were well known to the union--it is arguable that the union did not breach its duty of fair representation by failing to pursue her grievance.
 
 
 23
 We need not fully address the issue, however, because it is clear from the state of the record that there was no genuine issue of fact with regard to whether Ball was terminated for just cause under the collective bargaining agreement.
 
 
 24
 In her appellate brief, Ball has not contended that her termination was for other than just cause. In summarizing the facts, she states that "[b]ased upon Plaintiff's admissions of dishonesty ... the court accordingly granted defendants' motions for summary judgment and ordered the action dismissed." (Emphasis added.) (Brief of Appellant at 8.) Her deposition is also replete with admissions that she was dishonest with Pet, the police, an Assistant District Attorney, and the union. For example, the following colloquy occurred when she was questioned concerning her husband's telephone conversations with Pet management officials and the fictitious story that he related:
 
 
 25
 [Counsel]: So you worked out all the details of this concocted story except for when it would be perpetrated on the company. Is that what you're saying?
 
 
 26
 [Ball]: Yes.
 
 
 27
 And when asked if she would have acted differently had she known she could have been fired for dishonesty, Ball responded that "[she] would have told the truth, the absolute, positive truth." Therefore, to the extent that the affidavit filed with her motion in opposition to summary judgment suggests that she was not dishonest, it is unavailing. Reid v. Sears, Roebuck and Co., 790 F.2d 453, 460 (6th Cir.1986) ("A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony.")
 
 
 28
 Under Article IX of the collective bargaining agreement, an employee's termination for dishonesty is deemed to be for just cause, and does not require a prior warning. Based upon Ball's admissions of dishonesty, it cannot be contended that she was terminated without just cause in violation of the collective bargaining agreement. Accordingly, Ball has failed to point to a genuine issue for trial with regard to whether she was wrongfully terminated, and summary judgment for Pet was appropriate. Anderson, 477 U.S. at 248. Her failure to establish one prong of her hybrid Sec. 301/unfair representation suit of necessity requires dismissal of the other. Bagsby, 820 F.2d at 803.
 
 IV
 
 29
 For the foregoing reasons, the order of the district court granting summary judgment in favor of Pet and the union is AFFIRMED.