748 F.2d 323
 117 L.R.R.M. (BNA) 3068, 102 Lab.Cas. P 11,243
 Hugh J. MILLER, Albert B. Giroux, and Delmar Joseph Kulka,
on behalf of themselves and all other persons
similarly situated, Plaintiffs-Appellants,
v.
CHRYSLER CORPORATION and International Union, United
Automobile, Aerospace and Agricultural Implement
Workers of America (UAW), Defendants-Appellees.
 No. 82-1387.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 2, 1984.
Decided Nov. 5, 1984.
 
 Lawrence S. Katkowsky (argued), Keller, Katkowsky & Golden, Southfield, Mich., for plaintiffs-appellants.
 Philip M. Frost, Theodore Opperwall (argued), Ms. Marley S. Weiss (argued), Detroit, Mich., for defendants-appellees.
 Before JONES and WELLFORD, Circuit Judges and TIMBERS, Senior Circuit Judge.*
 WELLFORD, Circuit Judge.
 
 
 1
 In 1968, defendant UAW organized plaintiffs, a group of salaried technical and engineering employees of Chrysler's Manufacturing Engineering Department, Car Assembly Staff. At that time plaintiffs were receiving higher salaries and greater fringe benefits than were other Chrysler employees doing similar work. During the organizational campaign, the UAW allegedly promised plaintiffs that they would retain their special benefits and that the Company could not unilaterally change these benefits. Subsequently the plaintiffs formed their own bargaining unit, Unit 30, within the framework of Local 412 of the UAW, and the Union negotiated a "Memorandum of Understanding," which assured under certain circumstances the continuation of the plaintiff group's special benefit status. In subsequent years the Union negotiated two Letter Agreements, which continued in effect the special benefits for those plaintiffs who were members of Unit 30 in 1968.
 
 
 2
 In 1974, defendant Chrysler decided to merge its stamping and assembly divisions. The defendant company informed plaintiffs that the operations employing them were to be moved from the Hamtramck Assembly Plant to offices located on Outer Drive at or near Detroit. Plaintiffs then contacted defendant union expressing concern over the impending move and the potential loss of their special benefits. Later, in November, 1974, Chrysler officially notified the UAW that certain functions of the assembly division, including those of the plaintiffs, would be transferred pursuant to Section 57(b) of the National Engineering Agreement of October 19, 1973 between Chrysler and the UAW. Section 57(b) provides:
 
 
 3
 When operations are to be transferred from one such unit to another such unit, the Corporation will notify the International Union of such transfer. Such notice will be given as promptly as the circumstances in each case permit. The Corporation, at the request of the International Union, will negotiate the advisability of transferring to the receiving unit employees who are affected by the transfer of the work.
 
 
 4
 Plaintiffs were laid off in November, 1974, in connection with the merger of divisions. Their special administrative benefits ended and their bargaining unit disbanded. In January, 1975, the UAW and Chrysler negotiated an agreement under which plaintiffs were offered positions at the new plant on Outer Drive without their special benefits and higher salary classifications. Both Chrysler and the defendant Union took the position that plaintiffs were members of the bargaining group already in existence at the new Outer Drive facility, Local 212 of the UAW.
 
 
 5
 Thereafter, plaintiffs filed suit under Section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a), alleging that Chrysler had violated the collective bargaining agreement by transferring them and terminating their special benefits and that the Union had violated its duty of fair representation. Judge Gilmore, the trial judge, dismissed Count I of the complaint, which alleged that Chrysler had violated the collective bargaining agreement by terminating plaintiffs' special benefits. The judge decided that plaintiffs were entitled to a trial on Count II, which alleged that Chrysler unilaterally abolished their bargaining unit and stripped them of their special wage rates, job classifications, and other benefits in violation of their bargaining agreement. The issue to be determined at the trial was whether exhaustion was necessary, and if so, whether plaintiffs had in fact exhausted their contractual and internal union remedies.
 
 A. EXHAUSTION REQUIREMENT
 
 6
 After a trial, judgment was entered for defendants. The district court found "that plaintiffs failed to exhaust their adequate, available remedies under the contractual grievance procedure and that said failure was not excused by any claim of futility ...." From this adverse judgment, plaintiffs appeal.
 
 
 7
 An aggrieved employee "must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." Republic Steel v. Maddox, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). "A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it." Id; Monroe v. International Union, U.A.W., 723 F.2d 22 (6th Cir.1983). A recognized exception to this rule, however, exists when it is demonstrated that it would be "futile" for the employee to pursue the contractual remedy. Glover v. St. Louis-San Francisco Ry. Co., 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); Bsharah v. Eltra Corp., 394 F.2d 502 (6th Cir.1968).
 
 
 8
 Plaintiffs argue that no contractual remedy was pursued because it would have been futile to attempt to do so. Their underlying claim is that Section 57(b) of the National Engineering Agreement, which allows operations to be transferred from one unit to another, was improperly applied to their particular unit. The district court held that the collective bargaining agreement provided grievance and arbitration procedures through which the contractual merits of this claim could have been resolved. Exhibits in the record clearly establish that similar claims were dealt with through the contractual grievance and arbitration procedures. Plaintiffs in the instant case, however, assert that the Union would not have proceeded with their claim because it agreed with the Chrysler position about application of 57(b) of the contract.
 
 
 9
 Plaintiffs accordingly never filed a formal grievance or intra-union appeal with respect to this dispute. Rather, their argument is premised on a belief that the Union would not have carried through with such a grievance even if they had filed one.
 
 
 10
 Harold Schauer, the International Union representative, was heavily involved in the transactions surrounding the transfer of the plaintiffs, including the signing of a Memorandum of Understanding, dated January 15, 1973, agreeing to the transfer in dispute. Because of Schauer's involvement, plaintiffs claim that he (and therefore the Union) would not be willing to vigorously pursue their claim. In his trial testimony, Schauer conceded that contesting the issue, after having just executed the agreement, might be difficult. However, he concluded that a meritorious claim would indeed be pursued. The trial judge credited this testimony.[1]
 
 
 11
 Of particular significance is the fact that plaintiffs were made aware of the pending transfer prior to its effectuation. Chrysler officially informed the International Union of its plans after plaintiffs were first made aware of them, and Chrysler officials then met with plaintiffs to explain the details of the transfer. Thus, plaintiffs knew of Chrysler's plans for at least two months before the Union signed the Memorandum of Understanding. Certainly a grievance could have been filed before execution of this agreement. Mr. Schauer's testimony, given credence by the trier of fact, indicates that such a timely grievance would have been given serious consideration.
 
 
 12
 "The courts have generally insisted upon a 'clear and positive showing of futility' before excusing a failure to exhaust ...." Winter v. International Brotherhood of Teamsters, Local 639, 569 F.2d 146, 149 (D.C.Cir.1977) (concerning exhaustion of intra-union remedies); Monroe v. U.A.W., supra. Plaintiffs have failed here to make that showing.
 
 
 13
 For the reasons expressed in the district court's decision on the issue of the necessity of exhaustion in this case, we agree that judgment was properly rendered for defendants on Count II of the complaint.
 
 B. BREACH OF CONTRACT
 
 14
 Plaintiffs do not argue that the court below erred in granting summary judgment with respect to the claim of breach of contract as it relates to the termination of special benefits. Indeed, from the outset when "special benefits" were granted, it was provided in the contract that they were:
 
 
 15
 not a condition of employment or a part of any agreement between the Corporation and [the] Union, and the Corporation may revoke, terminate, suspend, modify or change these Programs, interpret and apply them at any time in its sole discretion. The Union hereby waives until the expiration of the new National Engineering Agreement all rights or claims of right to bargain collectively with respect to said Programs or any similar programs....
 
 
 16
 Accordingly, under the language of the contract itself, dismissal was proper with respect to claims arising from breach of contract due to termination of these benefits.
 
 
 17
 Plaintiffs, however, assert that later letter agreements promised them rates of pay as non-union administrative personnel (higher than they later actually received), and that these promises were not limited by language similar to the contract language quoted above. If this were so, it would have been a proper subject of grievance and plaintiffs failed to pursue their administrative remedies. Under the agreements, however, Chrysler was not bound to negotiate the terminable special benefits granted plaintiffs.
 
 
 18
 Plaintiffs have also set forth the argument that Chrysler had the right to end their benefits only if it did so for all its employees nationwide. This is based on an allegation that the company's practices modified the letter agreements. Plaintiffs have, however, submitted no proof supporting such an interpretation, which would be contrary to the language of the contract. Summary judgment for defendant Chrysler was appropriate as there was no substantial dispute of fact under Fed.R.Civ.P. 56.
 
 
 19
 Negotiation of subsequent bargaining agreements by UAW with Chrysler as to plaintiffs' rights would also abrogate any contractual claim by plaintiffs against the defendant union based on alleged promises in 1968. Cooper v. General Motors Corp., 651 F.2d 249 (5th Cir.1981). Furthermore, any action for alleged breach of duty by the union in 1968 and 1971 would, as determined by Judge Gilmore, be barred by even a "liberal three-year statute of limitations." See Echols v. Chrysler Corp., 633 F.2d 722 (6th Cir.1980).
 
 
 20
 Finally, plaintiffs claim that the district court erred in certifying this matter under Federal Rule of Civil Procedure 23(b)(3) instead of Rule 23(b)(2). According to Chrysler, however, plaintiffs' counsel sought certification under 23(b)(3). The only relevant difference between the sections is that members are allowed to "opt out" of the class under 23(b)(3). Apparently, moreover, several persons have opted out of the class. As the defendant UAW has pointed out, there were conflicting interests of members of the plaintiff's class. Enforcement of the 23(b)(3) certification by the district court was proper.
 
 
 21
 Because the date on which the plaintiffs' cause of action actually arose is seriously disputed, we have declined to apply the six month's statute of limitation as a bar in this case. See DelCostello v. Teamsters, 462 U.S. 1, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Retroactive application of that decision might bar the plaintiffs' claim against defendants, depending upon when plaintiffs' cause of action actually accrued, but we decline to rule on that issue and instead decide the case on the merits as indicated.
 
 
 22
 In any event, for the reasons stated, we affirm the district court's judgment for defendants.
 
 
 
 *
 The Honorable William H. Timbers, U.S. Court of Appeals for the Second Circuit, sitting by designation
 
 
 [1]
 In the recent Sixth Circuit case of Monroe v. International Union, UAW, 723 F.2d 22 (6th Cir.1983), this court held that relevant factors for determining whether exhaustion should be required include hostility on the part of the union, whether such procedures could lead to "full relief," and delay. Id. at 24-25. In that case the court held that "even assuming hostility on the part of Local 696 officials, plaintiff has made out no case of hostility on the part of the International UAW ..." Id. at 25. Similarly, even if Schauer's involvement in the signing of the Memorandum of Understanding could be said to have rendered him neutral or even hostile, the same cannot be said of the International Union