Rosetta **KIRKWOOD**, Appellant,

v.

**COURIER–JOURNAL and Louisville Times Company**, Appellees.

No. 92–CA–000672–MR.

Court of Appeals of Kentucky.

Feb. 5, 1993.

Discretionary Review Denied by Supreme Court Aug. 24, 1993.

Cecil Davenport, Philip C. Kimball, Louisville, for appellant.

Jon L. Fleischaker, Caroline Miller Oyler, Mary Ann B. Main, Wyatt, Tarrant & Combs, Louisville, for appellees.

Before HUDDLESTON, McDONALD and WILHOIT, JJ.

HUDDLESTON, Judge.

Rosetta Kirkwood appeals from a Jefferson Circuit Court order arising from her discrimination/harassment action granting summary judgment to her employer, the Courier–Journal and Louisville Times Company. Because Kirkwood has succeeded in stating a *prima facie* case of sexual harassment and racial discrimination, we reverse and remand for further proceedings.

Kirkwood began employment with the Courier–Journal in May 1987, as a press room utility person. She has remained the only black female in the press room since the date of her employment, although several black males and two white females are also employed. Kirkwood belongs to Graphic Communications International Union Local No. 19–N. At the time she filed this suit in 1991, Kirkwood remained a Courier–Journal employee, and had not suffered a demotion, suspension, pay-cut or discharge during her previous four years of employment.

In June 1991, Kirkwood filed the present action against the Courier–Journal, alleging sex and race discrimination pursuant to Kentucky's Civil Rights Statute, KRS 344.-

010 *et seq.*[1] Kirkwood has distilled the gravamen of her complaint from deposition testimony as follows:

> Kirkwood testified that her white male co-workers have engaged in the following conduct toward her:
>
> 1. Throwing (instead of placing) sharp and dangerous printing plates on to her cart ...
>
> 2. Spitting into and blowing their noses into rags that she must pick up ...
>
> 3. Calling her a "bitch," a "nigger," a "dike," and a "monkey," ...
>
> 4. Subjecting her to rude comments about the appearance of her buttocks ...
>
> 4. [sic] Subjecting her to sexually explicit pantomimes ...
>
> 5. Whistling at her as though she were a dog ...
>
> While most of this conduct was somewhat sporadic, Kirkwood testified that the name-calling has, " ... never stopped," ... She also testified that her supervisor for the last two years, Mr. Steve Kane, has observed most of the negative conduct described above and that, "He participates in it fully. He never stops it," ... when it is directed at Kirkwood, although he does discipline the men when they direct lewd or sexist behavior at Kirkwood's white female co-workers ...
>
> Kirkwood complained to upper management at the *Courier–Journal* about her treatment on the very first night she worked for the company ... this complaint obviously did not bring a halt to the treatment of which Kirkwood was complaining. Thereafter, *Courier–Journal* management met Kirkwood's complaints with indifference ... laughter ... or derision. Two *Courier–Journal* supervisors, a Mr. Hawkins and a Mr. Evans, apparently sought to outdo even the bigoted Mr. Kane in their racist attitudes toward Kirkwood. Mr. Hawkins has referred to Kirkwood as a "stupid bitch," a "nigger," and a "freak," ... while Mr. Evans has called Kirkwood a "black bitch," ...

> \* \* \* \* \* \*

> In response to the [*Courier–Journal's*] motion for summary judgment, [Kirkwood] also pointed out that the [*Courier–Journal's*] own exhibits clearly indicated that [Kirkwood] was treated less favorably than her male co-workers when she became ill at work or called in to work late ... In addition, Mr. Kane frequently made [Kirkwood] wait inordinate periods of time to get the supplies that she needed to do her job....

After Kirkwood's deposition was taken and several affidavits were filed, the Courier–Journal moved for summary judgment. The newspaper contended that Kirkwood's failure to utilize the mandatory grievance and arbitration procedures contained in her union's collective bargaining agreement precluded her from suing the paper. It submitted that Kirkwood's deposition failed to state evidence indicating that the Courier–Journal had discriminated in the terms and conditions of Kirkwood's employment based on her race or sex. The newspaper further submitted that Kirkwood's deposition failed to demonstrate the existence of sexual or racial harassment creating a "hostile work environment" as described in the relevant case law. Finally, the Courier–Journal maintained that Kirkwood failed to report the alleged incidents of harassment to the newspaper's "agents or supervisory personnel," thereby relieving it from any potential liability.

Kirkwood filed a memorandum opposing the Courier–Journal's summary judgment motion, in which she highlighted her testimony and recounted the pertinent case law. This effort notwithstanding, in a February 1992 order the Jefferson Circuit Court granted the newspaper's motion stating:

---

1. KRS 344.450 provides: "Any person deeming himself injured by any act in violation of the provisions of this chapter shall have a civil cause of action in circuit court to enjoin further violations, and to recover the actual damages sustained by him, together with the costs of the law suit, including a reasonable fee for his attorney of record, all of which shall be in addition to any other remedies contained in this chapter." Kentucky's Civil Rights Act (KRS 344.010 *et seq.*) tracks Title VII of the Civil Rights Act of 1964—See discussion, *infra.*

[T]he Court having considered the Memoranda filed by counsel for the parties, and being otherwise duly and sufficiently advised;

IT IS HEREBY ORDERED that the Courier–Journal's Motion for Summary Judgment be, and hereby is granted, and that all Plaintiff's claims against it be, and hereby are dismissed with prejudice.

This appeal followed.

Since the court below was not required to make findings of fact and stated no conclusions of law, we will consider each issue raised in the Courier–Journal's motion for summary judgment and weigh the newspaper's arguments against the facts stated by Kirkwood in her deposition testimony. We will view the record in a light most favorable to Kirkwood, with all doubts resolved in her favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 480 (1991).

■ We recognize that the relevant federal case law generally holds that where a collective bargaining agreement sets forth a grievance and arbitration procedure, a union employee must first exhaust these contractual procedures before initiating a judicial action. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–655, 85 S.Ct. 614, 616–617, 13 L.Ed.2d 580, 583–584 (1965). "A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it." *Miller v. Chrysler Corp.*, 748 F.2d 323, 325 (6th Cir.1984), citing *Republic Steel, supra.* This rule generally holds true, however, for problems arising from the interpretation and application of the collective bargaining contract *itself,* the so-called "contract grievances." *Republic Steel*, 379 U.S. at 652–653, 85 S.Ct. at 616, 13 L.Ed.2d at 583.

In *McNeal v. Armour and Co.*, Ky.App., 660 S.W.2d 957, 959 (1983), this Court addressed the issue of whether an action under KRS Chapter 344 could be maintained by an appellant who had simultaneously filed a complaint with his union under the nondiscrimination clause of his collective bargaining agreement, saying:

We believe that said actions may properly be maintained notwithstanding simultaneous pursuit of contractual rights stemming from the Union Contract. Civil rights are a group of rights attendant to citizenship. They belong to all persons and are not necessarily akin to private rights which may emanate from contracts of individual persons.... The United States Supreme Court has held that notions of "election of remedies" are not applicable in civil rights litigation when persons choose to enforce their contractual rights as well as their statutory civil rights. Contractual rights are not displaced merely because a statutory right against discrimination has been provided, both rights are independent in their origin....

We hold that both union contractual rights and rights emanating under KRS Chapter 344 are independent and equally available to aggrieved employees. (Citation omitted.)

■ Although it is clear that an informed individual may waive a statutory civil right by agreeing to submit any claim against his employer to binding arbitration, *Gilmer v. Interstate/Johnson Lane Corp.*, ―― U.S. ――, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), it is equally the case that such a waiver may not be accomplished prospectively on behalf of an individual by his union or collective bargaining unit. *Gilmer*, ―― U.S. at ―― ――, 111 S.Ct. at 1656–1657, 114 L.Ed.2d at 42–43.

Consequently, we hold that Kirkwood's suit against the Courier–Journal is not precluded by her failure to first energetically pursue [2] remedies under her collective bargaining agreement.

■ Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or

---

2. We note that Kirkwood testified that she attempted to relate her problems to her union representative, but found her efforts to be futile.

See *Glover v. St. Louis–San Francisco Railway Co.*, 393 U.S. 324, 330–331, 89 S.Ct. 548, 551, 21 L.Ed.2d 519, 524–525 (1969).

privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The Kentucky Civil Rights Act (KRS 344.-010 *et seq.*) tracks Title VII, but expressly provides broader relief than found on the face of the federal statute, "including damages for humiliation, personal indignity and other intangible injuries." *Mitchell v. Seaboard System Railroad*, 883 F.2d 451, 454 (6th Cir.1989); see *McNeal*, 660 S.W.2d at 958–959; (in *Meritor Savings Bank, infra*, the U.S. Supreme Court provided for recovery under Title VII in the absence of any economic effect on the plaintiff's employment, 477 U.S. at 65–66, 106 S.Ct. at 2404–2405).

In *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49, 59 (1986), the United States Supreme Court cited approvingly the following language from *Henson v. City of Dundee*, 682 F.2d 897, 902 (11th Cir.1982):

> "Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality. Surely, a requirement that a man or woman run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets."

The *Meritor* court of course recognized that not all harassing workplace conduct affects "a term, condition, or privilege" of employment within the meaning of Title VII. For sexual harassment to be actionable, the Court held, "it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id.*, 477 U.S. at 67, 106 S.Ct. at 2405, 91 L.Ed.2d at 60 (Citation omitted).

A *prima facie* case of discriminatory treatment based on race may further be established by showing that similarly situated individuals of another race are accorded more favorable treatment than the plaintiff. *Beaven v. Commonwealth of Kentucky*, 783 F.2d 672, 676 (6th Cir.1986). In *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), the Supreme Court noted that a *prima facie* case of racially disparate or discriminatory treatment under Title VII may be established by demonstrating that the management individual responsible for the questioned conduct has "made numerous derogatory comments about blacks in general and [the plaintiff] in particular," while pursuing the seemingly inequitable behavior. *Aikens*, 460 U.S. at 713, 103 S.Ct. at 1481, 75 L.Ed.2d at 409, Note 2.

Claims of discriminatory workplace harassment are rarely summarily dismissed where there is any colorable evidence of such harassment. As the United States Court of Appeals for the Sixth Circuit observed in *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 620 (6th Cir.1986), these claims should be considered on an "ad hoc basis" in that they involve a plethora of

> such objective and subjective factors as the nature of the alleged harassment, the background and experience of the plaintiff, her coworkers, and supervisors, the totality of the physical environment of the plaintiff's work area, the lexicon of obscenity that pervaded the environment of the workplace both before and after the plaintiff's introduction into its environs, coupled with the reasonable expectation of the plaintiff upon voluntarily entering that environment. Thus, the presence of actionable sexual harassment would be different depending upon the personality of the plaintiff and the prevailing work environment....

The Court additionally held:

> To accord appropriate protection to both plaintiffs and defendants in a hostile and/or abusive work environment sexual harassment case, the trier of fact, when judging the totality of the circumstances impacting upon the asserted abusive and hostile environment placed in issue by the plaintiff's charges, must adopt the perspective of a reasonable person's reaction to a similar environment under essentially like or similar circumstances.

Thus, in the absence of conduct which would interfere with that hypothetical reasonable individual's work performance and affect seriously the psychological well-being of that reasonable person under like circumstances, a plaintiff may not prevail on asserted charges of sexual harassment anchored in an alleged hostile and/or abusive work environment regardless of whether the plaintiff was actually offended by the defendant's conduct. *Id.*

Based on the foregoing authority, we believe that Kirkwood has clearly succeeded in stating a *prima facie* case of racial and sexual discrimination under KRS Chapter 344. Although, like the plaintiff in *Rabidue, supra,* she may not succeed in the trial on the merits, she certainly should be given opportunity—like the plaintiff in *Rabidue*—to have her day in court. We note once again the language from *Steelvest*:

> Under the Kentucky standard, we conclude that the movant should not succeed unless his right to judgment is shown with such clarity that there is no room left for controversy.... Only when it appears impossible for the non-moving party to produce evidence at trial warranting a judgment in his favor should the motion for summary judgment be granted.

*Steelvest,* 807 S.W.2d at 482 (Citation omitted). Kirkwood has manifestly cleared the *Steelvest* hurdle.

■ The Courier–Journal suggests that Kirkwood cannot maintain her action because she did not report the alleged incidents of harassment "to the Courier–Journal." Sexual or racial harassment by a co-worker is not a violation of Title VII unless the employer knew or should have known of the harassment and failed to take action. *Yates v. Avco Corp.,* 819 F.2d 630, 636 (6th Cir.1987); *Barrett v. Omaha Nat'l Bank,* 726 F.2d 424, 427 (8th Cir.1984). The promptness and adequacy of the employer's response to the alleged harassment are to be evaluated, again, on a case-by-case basis. *Yates,* 819 F.2d at 636; *Rabidue,* 805 F.2d at 621.

Given that Kirkwood has testified that the Courier–Journal's supervisory personnel were informed of her co-employees' objectionable conduct, or at least some of it, and given her testimony that supervisory personnel were among the individuals harassing her, we believe the newspaper's argument lacks merit.

We hold, therefore, that the trial court clearly erred by granting summary judgment for the Courier–Journal. The judgment is reversed and this case is remanded for further proceedings.

All concur.