61 F.3d 903
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Clarence M. ADKINS, et al., Plaintiffs-Appellants,
v.
UNITED MINE WORKERS OF AMERICA, Defendants-Appellees.
 No. 93-6386.
 United States Court of Appeals, Sixth Circuit.
 July 25, 1995.
 
 Before: MERRITT, Chief Judge; BROWN and BATCHELDER, Circuit Judges.
 BATCHELDER, Circuit Judge.
 
 
 1
 Plaintiffs-appellants appeal the district court's grant of summary judgment in favor of defendants-appellees in this duty of fair representation case. For the reasons discussed below, we affirm.
 
 I.
 
 2
 This is the second time this case has been before a panel of this Court. Plaintiffs are 362 miners who sued the United Mine Workers of America ("the UMWA"), alleging that the union violated its duty of fair representation under Sec. 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. Sec. 1985. These miners claim to have been wrongly excluded from a strike and from the benefits of the settlement of a lawsuit related to the strike ("CA 84-338").[1] They also claim that the UMWA violated its constitution by excluding them from union meetings.
 
 
 3
 The plaintiffs were all formerly employed by either Leslie Coal Mining Company, Inc., or McInnes Coal Mining Company, Inc., and had been laid off work because the mines were shut down from February 1983 until they were sold to a subsidiary of A.T. Massey Coal Company ("Massey") on October 1, 1984. The UMWA was the exclusive bargaining representative for employees of those mines. The district court previously found the plaintiffs to be union members to whom the UMWA owed a duty of fair representation.
 
 
 4
 In October 1984, the UMWA invited its members to sign up to picket the mines, which were scheduled to reopen with non-union workers. Only those UMWA members selected for picketing received strike benefits, which included a weekly stipend and health insurance. The plaintiffs claim that the union chose as picketers only union members who were willing to participate in acts of violence and excluded those union members who were unwilling to engage in violence or criminal activity.[2]
 
 
 5
 During the spring and summer of 1985, the union and its members were enjoined from committing or threatening to commit acts of violence, destruction of property, blocking access to and from the mines, and mass picketing. In April of 1985, the number of picketers was limited to twelve; after the union and its members were held in civil contempt for violating previous orders, the number of picketers was limited to six. The plaintiffs claim that union members who attempted to sign up for strike duty after the threat of violence abated were turned away and told that they were not needed because of the limited number of picketers permitted by the injunctions. The plaintiffs further claim that they were reassured by local union members and leaders that the UMWA was representing their interests in the lawsuit against the mine owners and would take care of them.
 
 
 6
 After four years of striking and litigation, the UMWA's civil lawsuit against the mine owners was settled in May 1988. The court approved the settlement whereby Massey agreed to pay the union $4.47 million and reopen one of the mines. Although the union had filed suit on behalf of "all individual members of the United Mine Workers of America adversely affected by the alleged breach of contract and conspiracy" of the defendant mining companies, the settlement agreement provided that "the bulk of" the settlement amount would be paid to the 245 union members who had remained on the picket line during the four-year strike and that those 245 members would comprise a panel from which miners would be hired to work in the reopened mine.
 
 
 7
 In August of 1988, the plaintiffs brought this action against the UMWA, the international union, claiming to have been wrongly excluded both from union meetings held to discuss the settlement of CA 84-338, and from distribution of the settlement proceeds and benefits. They claim that they attempted to file a grievance with the local union office but that the officer refused to initiate a grievance procedure, and that when their protests to the local union officials regarding the settlement were unavailing, the plaintiffs telephoned an assistant to the president of the UMWA, who also refused to initiate a complaint. Finally, the plaintiffs claim that after the settlement proceeds had been distributed, officials of the international union advised that no appeal could be filed.
 
 
 8
 In February 1990, the district court ordered summary judgment in favor of the union, finding that the distribution of settlement proceeds was appropriate. On appeal, this Court reversed, finding that material issues of fact existed concerning the plaintiffs' claim for breach of the duty of fair representation. Adkins v. United Mine Workers of America, 941 F.2d 392 (6th Cir. 1991). We remanded for discovery into "whether plaintiffs, or any of them, actually declined to join the strike, or to perform picketing, and/or whether plaintiffs 'left' the union during the relevant period." Id. at 399. On remand, the district court was instructed to permit "at least carefully limited discovery" regarding the plaintiffs' employee status, union membership and exhaustion of union administrative remedies. Id.
 
 
 9
 After the case was remanded, the plaintiffs sought discovery relating to the union's representation of them in CA 84-338. Plaintiffs moved the court for an order to compel production of documents relating to that action and its settlement. The union opposed the motion on grounds of privilege. At a hearing before the magistrate judge, the plaintiffs' counsel indicated the reasons for his request but did not make the requisite showing of need or unavailability of information from alternate sources; therefore, the motion to compel was denied. A written order was entered on January 11, 1993, denying the plaintiffs' motion to compel and setting deadlines for discovery and responses to pending motions. The plaintiffs did not file objections to this order.
 
 
 10
 The UMWA again moved for summary judgment, arguing that the plaintiffs had taken no depositions and could present no additional evidence in support of their claims although discovery was extended another year following the remand. On September 29, 1993, the district court again entered summary judgment in favor of the union, making the following findings: (1) summary judgment was appropriate against all but the ninety-two plaintiffs who had personally signed affidavits in support of their claims; (2) the union had not breached its duty of fair representation because its distribution of settlement proceeds was not arbitrary, discriminatory or done in bad faith; and (3) summary judgment was appropriate against all plaintiffs in any event because the action was foreclosed by the statute of limitations "regardless of the reason the plaintiffs did not, or were not permitted to, participate [in the strike], including the alleged prerequisite of a willingness to commit violent acts." The district court did not reach the issue of exhaustion of internal union remedies.
 
 
 11
 This timely appeal followed.
 
 II.
 
 12
 Plaintiffs argue that the trial court should have required production of the requested documents relating to CA 84-338 and should have determined whether such documents were privileged. The magistrate judge denied the plaintiffs' motion to compel because they did not meet their burden of showing sufficient need and unavailability of the information from other sources. Because the plaintiffs did not file written objections to the magistrate's order within ten days, they have waived appellate review of this issue. Fed. R. Civ. P. 72(a); Thomas v. Arn, 474 U.S. 140, 155 (1988); Willis v. Sullivan, 931 F.2d 390, 400-01 (6th Cir. 1991).
 
 III.
 
 13
 This court reviews a grant of summary judgment de novo. United Mine Workers of America v. Peabody Coal Co., 38 F.3d 850, 851 (6th Cir. 1994). Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All evidence and inferences to be drawn must be viewed in the light most favorable to the non-movant, see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); however, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The non-movant's response, "by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).
 
 
 14
 A. The statute of limitations is six months.
 
 
 15
 Although the appellants argue in their brief that the Kentucky state law on attorney malpractice should govern the statute of limitations in this duty of fair representation case, there is no doubt that the applicable period is six months. See DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 170-71 (1983); Adkins v. International Union of Elec., Radio & Mach. Workers, 769 F.2d 330, 335 (6th Cir. 1985); Storey v. Local 327, Int'l Bhd. of Teamsters, 759 F.2d 517, 520-23 (6th Cir. 1985) (discussing federal preemption and limitations periods in labor claims). The question in this case really is one of accrual. To decide whether plaintiffs can present a viable issue of fact for trial, it is necessary to determine when their claim(s) accrued and evaluate what they did in light of what they should have done to assert and preserve their cause(s) of action.
 
 
 16
 A claim arises under Sec. 301 "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." Adkins, 769 F.2d at 335; Robinson v. Central Brass Mfg. Co., 987 F.2d 1235, 1239 (6th Cir.), cert. denied, 114 S. Ct. 92 (1993). The determination of the accrual date is objective: "the asserted actual knowledge of the plaintiffs is not determinative if they did not act as reasonable persons and, in effect, closed their eyes to evident and objective facts concerning the accrual of their right to sue." Chrysler Workers Ass'n v. Chrysler Corp., 834 F.2d 573, 579 (6th Cir. 1987), cert. denied, 486 U.S. 1033 (1988).
 
 
 17
 The district court found that the plaintiffs' cause of action arose, if at all, in 1985 when they were not selected for the strike. The plaintiffs argue that (1) the limitations period should be equitably tolled because the miners relied on assurances that the UMWA was representing their interests in the strike and lawsuit; and (2) since the union's actions during the course of the strike and settlement amount to a sort of continuing violation, the plaintiffs' suit is timely because it was filed within six months of the final settlement of the lawsuit.
 
 
 18
 1. Equitable tolling of the statute of limitations is not
 
 
 19
 possible on these facts.
 
 
 20
 The plaintiffs claim that when volunteers protested being rejected for strike duty, local union officials reassured them that the UMWA was representing and would take care of their interests; therefore, the plaintiffs relied on these statements and did not formally pursue any redress. In order to support an equitable tolling of the statute of limitations, this Circuit requires a plaintiff to prove fraudulent concealment on the part of the defendant. Noble v. Chrysler Motors Corp., 32 F.3d 997, 1001 (6th Cir. 1994). There are three elements necessary to prove fraudulent concealment:
 
 
 21
 (1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts.
 
 
 22
 Id., citing Dayco Corp. v. Goodyear Tire & Rubber Co., 523 F.2d 389, 394 (6th Cir. 1975) (emphasis added). The plaintiffs in this case cannot meet their burden on this issue. They have not shown wrongful concealment of a course of action by the UMWA. The record demonstrates that they should have known of their cause of action when the local union's rejection of volunteers deprived them of strike benefits. Thus alerted, the rejected volunteers should have pursued the matter to determine what effect their non-picketer status would ultimately have with respect to the pending UMWA action against the mine owners; however, the record does not reflect that they exercised due diligence to discover the facts that now form the basis for their claim against the international union.
 
 
 23
 2. Plaintiffs have not shown a continuing violation by
 
 
 24
 these defendants.
 
 
 25
 This Circuit has recognized the propriety of tolling the statute of limitations where a continuing violation by a union has resulted in repeated injury to union members. See Sevako v. Anchor Motor Freight, Inc., 792 F.2d 570, 574-75 (6th Cir. 1986). However, even in such cases, "[o]nly those asserted improper acts occurring six months prior to the institution of suit in federal district court ... are actionable." Id. Assuming, arguendo, that the actions and decisions of the UMWA's local and international officials between 1984 and 1988 constituted a continuing course of action resulting in injury to these plaintiffs, Sevako would still require a showing that the actions of the defendant international union and its officers in the six months prior to August 22, 1988, were improper; wrongdoing allegedly committed by the defendants prior to February 22, 1988 (selection of picketers and requiring willingness to commit violence), would not be actionable. See id.
 
 
 26
 We agree with the district court that the entire cause of action, if there is one, accrued in 1985, and that this action was therefore untimely filed. However, even if there were two or perhaps three separate causes of action on the facts alleged, for the reasons which follow, the district court's granting of summary judgment was appropriate.
 
 
 27
 B. The district court's findings were not erroneous.
 
 
 28
 Even if the plaintiffs' claims that they were wrongly denied admittance to union meetings relating to the strike and settlement, and that they were wrongly denied the benefits of the settlement could survive the statute of limitations as a continuing violation under Sevako, it would nevertheless be necessary to affirm the district court's grant of summary judgment. The district court found that the plaintiffs had failed to show that any representative or agent of the UMWA had prevented them from attending union meetings. This finding is not clearly erroneous. The plaintiffs took no deposition testimony. We have carefully reviewed each of the affidavits relied upon by the plaintiffs. These affidavits are in the passive voice and do not name any entity or individual as being responsible for the alleged wrongdoing. Significantly, with the exception of one vague allegation in one affidavit, none of the affidavits names the defendants here--the international union and its officers--as the individuals responsible for the alleged misconduct. The affidavits simply do not provide any evidence that these defendants, individually or in their official capacity, either made any misrepresentations to the plaintiffs about looking out for their interests or refused to permit the plaintiffs to attend the union meetings at which the settlement was discussed.[3]
 
 
 29
 The dissent says that summary judgment was improper because the "plaintiffs did not and could not know how the union would disburse the settlement benefits until the settlement became final" and that the plaintiffs' suit is timely because it was brought within six months of that date. Dissenting Opinion at 2. The dissent states the obvious. However, as discussed above, when their non-selection for strike duty deprived them of strike pay and health benefits, these plaintiffs knew or should have known that they were not on the same legal footing as those selected for the strike force. The district court did not err in concluding that the record contained no evidence from which a jury could have found that the UMWA's payment of the settlement proceeds to those union members who had suffered the greatest hardship by walking the picket line for four years was either arbitrary or done in bad faith.
 
 
 30
 C. The miners failed to exhaust internal union remedies.
 
 
 31
 Finally, summary judgment against these plaintiffs is proper because their claims were foreclosed from the outset for failure to exhaust internal union remedies available to the plaintiffs.[4] Before a union member may sue his union for breach of the duty of fair representation, he must exhaust the grievance procedure provided by the union constitution. Clayton v. International Union, UAW, 451 U.S. 679, 692-96 (1981). Courts have discretion to decide whether to require exhaustion if any of three factors are present: (1) union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; (2) the internal union appeals procedure would be inadequate either to reactivate his grievance or to award him the full relief he seeks; or (3) exhaustion of internal procedures would unreasonably delay his opportunity to obtain a judicial hearing on the merits of his claim. Id. at 689; Monroe v. International Union, UAW, 723 F.2d 22, 24-25 (6th Cir. 1983).
 
 
 32
 The UMWA constitution provides a process for internal appeals of disputes within the union. This process requires written notice to "the individual or body whose action or decision is being appealed." 17 UMWA Const. Sec. 4. The constitution provides for progressively higher levels of appeal and review from the local officers up to the international organization. Id. at Sec. 1. Since the plaintiffs have alleged breach of contract based on the union's constitution, they cannot claim ignorance of the constitution and its various terms and provisions and would, in any event, be bound by the privileges and duties as specified by that constitution. See Vestal v. Hoffa, 451 F.2d 706 (6th Cir. 1971); Cleveland Orchestra Committee v. Cleveland Federation of Musicians, 303 F.2d 229 (6th Cir. 1962) (both finding that by joining a union, workers agree to be governed by the union's constitution and regulations).
 
 
 33
 The plaintiffs have provided no evidence in this record to indicate that any of them followed the written appeals process to protest the actions of the local officers regarding either selection of picketers or the settlement of CA 84-338 and the distribution of the settlement proceeds. The plaintiffs, however, argue that it would have been futile to attempt exhaustion of internal remedies regarding the settlement of CA 84-338. This Circuit requires a clear and positive showing of futility before excusing a failure to exhaust. Monroe, 723 F.2d 22; Miller v. Chrysler Corp., 748 F.2d 323, 326 (6th Cir. 1984). Plaintiffs have not met this burden. Nor can the plaintiffs escape exhaustion requirements by arguing that they relied on reassurances from local union members and officials that the UMWA was representing their interests during the strike and in the UMWA action against the mine owners. Ryan v. General Motors Corp., 929 F.2d 1105, 1108 (6th Cir. 1989). The plaintiff's telephone calls and meetings with various levels of the UMWA officials do not satisfy or eliminate the requirement of the law and of the union's constitution that plaintiffs follow specific procedures in filing appeals. The record does not support excusing these plaintiffs' failure to exhaust available internal remedies on any of the three possible grounds.
 
 
 34
 First, there is no evidence in the record that the UMWA's officials were so hostile to these plaintiffs that plaintiffs could not hope to obtain a fair hearing on their claims as those claims arose. Second, there is nothing in the record to indicate that the internal appeals procedure would have been inadequate to provide these plaintiffs the relief they sought. They could have followed the procedures available in the union constitution to appeal the local union officials' selection of picketers for the strike force, to protest their exclusion from union meetings, and to protest the actions of the international union regarding the settlement. Third, exhaustion of internal appeals would not have unreasonably delayed the miners' opportunity to obtain a judicial hearing on the merits of their claims. By law, union members cannot be required to spend more than four months on internal appeals. See 29 U.S.C. Sec. 411(a)(4) (West Supp. 1994). The union's constitution clearly provides for expedited appeals. UMWA Const. Secs. 5-9. Thus, the plaintiffs have not clearly and positively shown that it was futile for them even to attempt to exhaust the internal union remedies available to them or the existence of any of the factors that would permit the district court in its discretion to excuse the plaintiffs' failure to exhaust those internal remedies.
 
 IV.
 
 35
 For all of the foregoing reasons, the judgment of the district court granting summary judgment to the defendants is AFFIRMED.
 
 
 36
 MERRITT, Chief Judge, dissenting.
 
 
 37
 This case unfortunately illustrates how cavalier we have become in applying the six-month statute of limitations set forth in Del Costello and how trigger happy we are to eliminate trials by issuing summary judgment orders when the material facts clearly remain in dispute. The affidavits submitted by plaintiffs create a dispute of fact on the issue of whether the union refused to include them in a settlement because they refused to engage in a violent strike. The case ought to be tried.
 
 
 38
 The case arises out of a dispute about the distribution of settlement benefits from a settlement that was entered into between the UMWA and the mine on May 7, 1988. The settlement ended a four-year mining strike by union workers. The settlement provided that the UMWA would receive approximately $4.47 million, that the mine would set aside five tons of coal to be extracted exclusively by union miners and that a certain number of permanent jobs in the mine would be awarded to union miners. The UMWA decided that these benefits, both the cash distribution and the awarding of jobs, would go exclusively to the 245 union miners who had actively participated in the four-year strike, a strike marred by serious union-induced violence. The plaintiffs are the 362 remaining union miners who had not actively participated in the strike but were included in the group of miners represented by the UMWA in the suit against the mines. These miners brought the present suit against the UMWA for breach of its duty of fair representation pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185. I respectfully dissent because I believe that (1) the statute of limitations under Section 301 does not bar all of plaintiffs' claims and (2) genuine issues of material fact remain concerning whether the UMWA breached its duty of fair representation in distributing the settlement proceeds thereby making summary judgment inappropriate.
 
 
 39
 The Statute of Limitations Does Not Bar Plaintiffs' Claims
 
 
 40
 My dissent focuses solely upon whether the union breached its duty of fair representation to the plaintiffs when it decided how to distribute the settlement benefits in May 1988. Claims for breach of the duty of fair representation must be brought within six months of the alleged breach. 29 U.S.C. Sec. 185; Del Costello v. International Brthhd. of Teamsters, 462 U.S. 151 (1983). The six-month limitations period begins on the date that plaintiffs "discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." Nida v. Plant Protection Ass'n Nat'l, 7 F.3d 522, 525 (6th Cir. 1993)(quoting Shapiro v. Cook United, Inc., 762 F.2d 49, 51 (6th Cir. 1985)).
 
 
 41
 There is no dispute that plaintiffs did not and could not know how the union would disburse the settlement benefits until the settlement became final on May 23, 1988. The plaintiffs' cause of action concerning distribution of the settlement benefits, therefore, could not have arisen before May 1988 and the suit brought in August 1988 was well within the six-month statute of limitations period. The Court has simply defaulted in the performance of its appellate review function on this issue.
 
 
 42
 A Genuine Issue of Material Fact Exists as to Whether the Union Breached Its Duty of Fair Representation to Plaintiffs
 
 
 43
 There is no dispute that the UMWA owed the plaintiffs a duty of fair representation throughout the litigation, settlement and distribution of the settlement benefits. The only question is whether the union breached that duty. A union breaches its duty of fair representation when its conduct toward a represented employee is "arbitrary, discriminatory or in bad faith." Vaca v. Sipes, 386 U.S. 171, 207 (1967); accord Linton v. United Parcel Service, 15 F.3d 1365 (6th Cir. 1994). Moreover, an allegation of bad faith such as that made by plaintiffs here requires inquiry into the subjective motivation behind the union's conduct. Trnka v. Local Union No. 688, 30 F.3d 60 (7th Cir. 1994).
 
 
 44
 Genuine issues of material fact exist regarding that inquiry, making summary judgment inappropriate. Although the majority opinion finds that the affidavits do not supply the necessary evidence of a disputed fact, the affidavits contain numerous statements that support plaintiffs' claims of bad faith. For example, several affidavits state that as late as the night before the settlement distribution was to be announced in May 1988, the union's district field representative told plaintiffs that they were being represented by the union in the lawsuit and that plaintiffs here would be involved in the settlement. See, e.g., Affidavit of Calvin A. King at paragraphs 6-7 (J.A. at 234); Affidavit of Andy Case at paragraphs 6-7 (J.A. at 237). Other affidavits state that plaintiffs here were told at the inception of the lawsuit in 1984 that they were being represented by the union and would be taken care of by the union. Affidavit of Jerry Hammond, et al., at p 3 (J.A. at 244). Furthermore, plaintiffs here received from the union a copy of the injunction issued in the suit in 1985. Id. at p 4 (J.A. at 245). These representations by the union and the conduct of the union after the inception of the suit led plaintiffs reasonably to believe that the union was representing them in good faith. If the affidavits submitted in this case by plaintiffs are not sufficient to demonstrate that material disputes of fact exist, it is difficult to conceive of what amount and type of evidence the majority would find sufficient to survive a summary judgment motion. The facts asserted by plaintiffs in their affidavits, if viewed in the light most favorable to plaintiffs, as we are required to do, point to the necessity for a trial in this case. Of particular concern is the fact that plaintiffs have presented evidence in their affidavits that they were assured by union officials that the union was looking out for their interests in the suit. If a statement by a union representative to a union member is one that is intentionally misleading and of a nature that it would be reasonably relied upon, the statement may breach the duty of fair representation. Swatts v. United Steelworkers of America, 808 F.2d 1221 (7th Cir. 1986). In light of the representations and assurances plaintiffs allege that they received from the union throughout the course of the litigation, and the reasonable reliance placed by plaintiffs on those representations, a genuine issue of material fact exists as to whether the union acted in bad faith when it totally excluded plaintiffs from receiving settlement benefits.
 
 
 45
 In addition to the statements made by the union officials to the plaintiffs, plaintiffs have presented other evidence that the union may have breached its duty of fair representation by the settlement distribution. Taken collectively, the alleged actions of the union between 1984 and 1988 as described by plaintiffs in their affidavits raise a genuine issue of fact as to whether the union's conduct towards the plaintiffs was in bad faith at the time of settlement.
 
 
 46
 The conduct includes the allegations of plaintiffs that they were excluded from the strike because they refused to engage in violence. See, e.g., Affidavit of Roy B. Justice at paragraphs7-12 (J.A. at 242); Affidavit of Calvin A. King at p5 (J.A. at 233). This allegation raises the question of whether the union excluded plaintiffs from receiving settlement proceeds in retaliation for refusing to agree to participate in violence. Furthermore, plaintiffs allege that they were excluded from union meetings held to decide how to distribute the settlement funds. See, e.g., Affidavit of Calvin A. King at paragraphs8-9 (J.A. at 234). Affidavit evidence was submitted by the plaintiffs raising a material question as to whether plaintiffs were improperly excluded from meetings which, as dues paying members of the union and as the members represented in the litigation, they had every right to attend.[1] In addition, plaintiffs also allege in their affidavits that union officials told them it would do no good to appeal the settlement distribution and that the union would not initiate a grievance proceeding on behalf of plaintiffs. See, e.g., Affidavit of Jerry Hammond, et al., at paragraphs10-12 (J.A. at 246-47).
 
 
 47
 The court has simply not paid serious attention to the facts, and its failure has led to a serious error. The parties deserve better.
 
 
 48
 The Failure of Plaintiffs to Exhaust Internal Union Remedies
 
 
 49
 The district court declined to reach the issue of whether the plaintiffs had exhausted their internal remedies as required by the union constitution. Because the majority opinion reaches the issue and, I believe, decides it incorrectly, I will address the issue herein.
 
 
 50
 Where bad faith is the basis for a claim of unfair representation or where the refusal by the union to process the internal grievance is in bad faith, failure to exhaust internal remedies on the ground of futility may be permissible. See Vaca v. Sipes, 386 U.S. at 186; see also Fleming v. Chrysler Corp., 575 F.2d 1187 (6th Cir. 1978). Furthermore, where it is likely, as here, that the position of the union is unlikely to be altered due to the nature of the dispute, pursuit of internal remedies may be excused for futility. See Geddes v. Chrysler Corp., 608 F.2d 261, 265 (6th Cir. 1979). Due to the allegations of bad faith made by the plaintiffs concerning the conduct of the union before, during and after the settlement was reached, I believe that questions of fact remain as to whether it would have been futile for the plaintiffs to exhaust their internal remedies before filing suit.
 
 
 51
 For the foregoing reasons, I respectfully dissent.
 
 
 
 [1]
 The action was styled United Mine Workers of America v. Picands-Mather Company, Inc., Robert Coal Company, Inc., Leslie Coal Mining Company, Inc., McInnes Coal Mining Company, Inc., Sidney Coal Company, Inc., and Omar Mining Company, Inc., Civil Action No. 84-338, United States District Court, Eastern District of Kentucky, and alleged a conspiracy to violate the UMWA's collective bargaining agreement with Robert Coal and tortious interference with that agreement by the A.T. Massey Coal Company, which purchased the mines
 
 
 [2]
 The plaintiffs submitted affidavits of picketers attesting that the willingness to commit violence was required for selection to participate in the picketing. See discussion, infra
 
 
 [3]
 For example, the affidavits cited in the dissenting opinion refer to "Union representatives" but do not name anyone in particular
 
 
 [4]
 The dissent contends that we have incorrectly decided this issue because "questions of fact remain as to whether it would have been futile for the plaintiffs to exhaust their internal remedies before filing suit." Dissenting Opinion at 5-6. Appellants argue that the issue of exhaustion is not properly before the court on appeal and that the union has unfairly raised this issue. However, the union has argued exhaustion from the beginning of this lawsuit, and this Court remanded the case specifically for discovery on the exhaustion issue. If there was any evidence on the issue in their favor, the plaintiffs were on notice to come forward with it. As explained infra, however, the plaintiffs have not shown that it was futile even to attempt exhaustion of their internal remedies
 
 
 [1]
 The district court found in its first opinion concerning this case, "the plaintiffs continued to pay their union dues [throughout the course of the litigation with Massey] and justifiably believed they were being represented by the union." District Court Opinion at 5 (filed Feb. 8, 1990), J.A. at 109