Eric IRVIN, Sr., Appellant,

v.

John AUBREY, Sheriff of Jefferson County, Kentucky, Appellee.

No. 2000–CA–002824–MR.

Court of Appeals of Kentucky.

Dec. 28, 2001.

Discretionary Review Denied
Jan. 15, 2003.

Kenneth L. Sales, Louisville, KY, for Appellant.

David Leightty, Louisville, KY, for appellee.

Before BUCKINGHAM, SCHRODER, and TACKETT, Judges.

## OPINION

BUCKINGHAM, Judge.

Eric Irvin, Sr., appeals from a summary judgment entered by the Jefferson Circuit Court dismissing his religious and racial discrimination claims against the Jefferson County Sheriff's Office (JCSO). We affirm.

Irvin, an African–American male, was hired by the JCSO as a deputy sheriff in October 1995. When first hired, he was assigned to the metal detectors at the entrance of the courthouse. At his request, he was transferred to the transportation unit. That job required him to transport prisoners between the jail and the courthouse. Again at his request, Irvin was transferred to the position of bailiff for the courtroom of Jefferson Circuit Judge Edwin Schroering.

Irvin was also a Baptist minister, and adherence to his faith and position as a minister required him to be in church every Sunday morning. This posed no conflict with his duties as a deputy sheriff as his first three positions involved no scheduled work on Sundays. The conflict did not arise until the summer of 1996 when Irvin made yet another request for a transfer. In his request, he asked to be assigned to the "criminal unit." The only criminal unit in the JCSO is the emergency protective order (EPO) division. This unit, which has responsibility for serving all emergency protective orders issued in

Jefferson County, operates twenty-four hours a day, seven days a week. Irvin's request to transfer to the EPO unit was granted, but he subsequently declined the transfer because he was not guaranteed Sunday mornings off.

In October 1996, Irvin filed complaints with the Kentucky Commission on Human Rights and the federal Equal Employment Opportunity Commission. These complaints were eventually withdrawn, and on June 24, 1997, Irvin filed suit in the Jefferson Circuit Court against Jim Vaughn in his capacity as the Jefferson County sheriff.[1] In his complaint, Irvin alleged both religious and racial discrimination. On November 2, 2000, the trial court entered summary judgment in favor of the JCSO, and this appeal by Irvin followed.

KRS[2] 344.040 prohibits religious discrimination by employers. The elements of a *prima facie* case of religious discrimination were set forth by this court in *Kentucky Comm'n on Human Rights v. Lesco,* Ky.App., 736 S.W.2d 361 (1987). Therein, the court held that "one must prove that (1) he has a bona fide belief that compliance with an employment requirement is contrary to his religious faith; (2) he informed his employer about the conflict; and (3) he was discharged because of his refusal to comply with the employment requirement." *Id.* at 363.

 While the trial court elected to resolve Irvin's religious discrimination claim on the basis of "reasonable accommodation," we note that Irvin appears to have failed to establish a *prima facie* case. Irvin was not discharged nor did he suffer a demotion. In fact, his request for transfer was granted. Irvin has attempted to rely on a claim that his refusal to accept the transfer operated to deny him a position which he felt was more preferential. Yet, he has been unable to cite, nor have we found, any precedent which would indicate that these circumstances support a *prima facie* case for religious discrimination.

 Be that as it may, we will now turn to the trial court's "reasonable accommodation" conclusion. Employers such as the JCSO are required to make reasonable accommodations to the religious needs of employees where such accommodations can be made without undue hardship. *Kentucky Comm'n on Human Rights v. Dept. For Human Resources, Hazelwood Hosp.,* Ky.App., 564 S.W.2d 38, 39 (1978). There must be more than a *de minimis* cost in the form of either lost efficiency or wages in order to constitute undue hardship which will relieve an employer of its duty to accommodate the religious beliefs of its employees. *Lesco,* 736 S.W.2d at 364.

The real issue in determining if the trial court properly granted summary judgment in favor of the JCSO on Irvin's religious discrimination claim is whether there was a genuine issue of material fact concerning whether the JCSO provided reasonable accommodation for Irvin's religious practices. The trial court relied on *Kentucky Comm'n on Human Rights v. Kerns Bakery, Inc.,* Ky.App., 644 S.W.2d 350 (1982). In *Kerns,* this court upheld a finding by the Kentucky Commission on Human Rights that the employer could have easily accommodated the employee without undue hardship to its business by either transferring him to an available non-Sunday job or simply excusing him from Sunday work. *Id.* at 351. The court in the case *sub judice* held that Irvin "had multiple opportunities to switch to other assign-

---

**1.** John Aubrey succeeded Vaughn as Jefferson County sheriff and was substituted as the party defendant in Vaughn's place.

**2.** Kentucky Revised Statutes.

ments which did not require Sunday work."

■ The facts here are that Irvin held a position as a deputy sheriff of the JCSO which did not require him to work on Sundays, but he requested a lateral transfer to a position that required Sunday work. In other words, Irvin requested to go from a position that did not interfere with his religious practices to one that did. When the transfer was granted, he rejected it because it would require him to work on Sundays. Irvin was allowed to continue working in his initial position which held the same rank and the same rate of pay. Under these circumstances, we conclude that the trial court was correct in holding that the JCSO provided reasonable accommodation for Irvin's religious practices and that there was no fact issue in this regard.

■■ Irvin nevertheless argues that he should have been allowed to make the transfer to the EPO unit and that other accommodations should have been made so that he would not have had to work on Sundays. In *Pinsker and Aurora Educ. Ass'n v. Joint Dist. No. 28J of Adams and Arapahoe Counties,* 735 F.2d 388 (10th Cir.1984), the court held that Title VII of the federal Civil Rights Act of 1964 "does not require employers to accommodate the religious practices of an employee in exactly the way the employee would like to be accommodated." *Id.* at 390.[3] Further, Title VII "requires only 'reasonable accom-

modation,' not satisfaction of an employee's every desire." *Wright v. Runyon,* 2 F.3d 214, 217 (7th Cir.1993). Also, the U.S. Supreme Court stated in *Ansonia Bd. Of Educ. v. Philbrook,* 479 U.S. 60, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986), that "where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end. The employer need not further show that each of the employee's alternative accommodations would result in undue hardship." 479 U.S. at 68, 107 S.Ct. 367. Therefore, since the JCSO allowed Irvin to remain in his original position, which reasonably accommodated his religious practices, it was not required to make special provision to accommodate him in the position he desired.

■ Finally, we note that Irvin made no suggestions to the JCSO as to alternative reasonable accommodations once it became apparent he would not work in the EPO unit due to his religious practices. In the *Hazelwood Hospital* case, the court held that "the employee cannot sit idly by and shift all the responsibility for accommodation to the employer." 564 S.W.2d at 40. In short, we hold that Irvin had no valid claim for religious discrimination when he voluntarily requested a transfer from one position that did not interfere with his religious practices to another which did and subsequently refused it.[4]

---

3. Because the Kentucky Civil Rights Act mirrors Title VII of the federal Civil Rights Act, federal standards are used in evaluating discrimination claims under the Kentucky act. *See Smith v. Leggett Wire Co.,* 220 F.3d 752 (6th Cir.2000). *See also Kentucky Comm'n on Human Rights v. Com., Dept. Of Justice,* Ky. App., 586 S.W.2d 270, 271 (1979).

4. The U.S. Supreme Court addressed a similar fact situation in *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977). As in the case *sub judi-*

ce, the employee requested and received a transfer to a different job with his employer. The employee was called upon to work on Saturdays at his new job. When he refused to do so for religious reasons, he was discharged. In that case, the U.S. Supreme Court held that the employer made reasonable efforts to accommodate the employee and that the suggested alternatives would have been an undue hardship on the employer. 432 U.S. at 77. The Court also held that the employer's conduct did not violate Title VII provisions. *Id.* at 70.

Irvin's second argument is that the trial court erred in awarding summary judgment to the JCSO on his racial discrimination claim. KRS 344.040 prohibits discrimination by employers on the basis of race. Irvin contends that another deputy sheriff, who was a white Baptist minister, was placed in an assignment where no Sunday work was required as an accommodation to his religious beliefs. That deputy sheriff worked in the civil process unit which had no Sunday morning shift.[5]

█ A *prima facie* case of race discrimination normally requires a showing that the person did not receive the position. *See Turner v. Pendennis Club*, Ky. App., 19 S.W.3d 117 (2000). In this case, rather than being denied the position, Irvin's request was granted. Unable to establish a *prima facie* case in this way, Irvin has instead attempted to show that a similarly situated individual of another race received more favorable treatment.

In *Kirkwood v. Courier–Journal*, Ky. App., 858 S.W.2d 194 (1993), the court held that "[a] *prima facie* case of discriminatory treatment based on race may further be established by showing that similarly situated individuals of another race are accorded more favorable treatment than the plaintiff." *Id.* at 198. Because Irvin had admitted that no Sunday work was required in the assignment of the other deputy, the trial court held that "there appears to be no factual predicate upon which to base a claim of racial discrimination." Thus, the trial court granted summary judgment in favor of the JCSO on this claim as well.

We agree with the trial court. There are factual distinctions between Irvin's situation and that of the other deputy. First, Irvin did not request to be transferred to the civil process unit. Rather, he requested to be transferred to the EPO unit which required Sunday work. Second, the other deputy did not work in the EPO unit but held a position in the civil process unit which had no shift duty whatsoever for Sunday mornings. Finally, Irvin failed to demonstrate any facts which would indicate the other deputy had been similarly situated, i.e., that he had originally sought a position in the EPO unit and was accommodated through an alternative transfer to the civil process unit. In short, we conclude that the trial court correctly granted summary judgment to the JCSO on Irvin's racial discrimination claim.

The judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

---

5. Irvin later requested transfer to the civil process unit and was granted his request.